[Crim. No. 921.  Chambers of Chief Justice.—September 19, 1903.]

## In re CHIN MEE HO on Habeas Corpus.

HABEAS CORPUS — CUSTODY OF MINOR—GUARDIANSHIP—PATERNITY.— Where the alleged father of a Chinese girl joined in a petition for letters of guardianship to another petitioner, upon which petition letters of guardianship were issued to such other petitioner, and the appointment involved the determination of the alleged paternity of the child by a competent tribunal, the right of the duly appointed guardian to the custody of the child cannot be questioned upon *habeas corpus*, regardless of the fact of paternity.

ID.—JURISDICTION OF GUARDIANSHIP—NOTICE—BOND—COLLATERAL ATTACK.—The notice to be given of the appointment of a guardian is within the discretion of the court, and where the only persons entitled to notice were the two persons jointly petitioning for the appointment, one of whom was found to be the father of the girl, who was her only relative, and had actual notice of the appointment, and was present and consenting thereto, no other notice was requisite to the jurisdiction to appoint the guardian; and the order of appointment cannot be collaterally attacked on *habeas corpus*, for any error in the proceedings, or for failure to require a bond of the guardian.

PETITION for Writ of Habeas Corpus to test the validity of letters of guardianship issued by the Superior Court of the City and County of San Francisco.  T. F. Graham, Judge.

The facts are stated in the opinion of the chief justice.

·Henry E. Monroe, for Petitioner.

Thomas D. Riordan, and Riordan & Lande, for Respondents.

BEATTY, C. J.—This is a proceeding in *habeas corpus* prosecuted by the superintendent of the Presbyterian Mission Home in behalf of a Chinese girl, who, it is claimed, is held in bondage by Louie Ying and Louie Young.

It is alleged, in substance, by the petitioner that Louie Young, falsely pretending to be the father of the girl, placed her in the family of Louie Ying, where she was compelled to perform the duties of a domestic servant; that she voluntarily left Louie Ying's house and sought the protection of the ladies conducting the Presbyterian Mission Home for Chinese girls, where she was allowed to remain until she was forcibly removed by Louie Young and Louie Ying, in pursuance of an order of the superior court awarding the custody to them after a hearing upon *habeas corpus*. Immediately after regaining the custody of the girl Louie Ying petitioned the superior court to appoint him her guardian, and the court made an order to that effect, upon which letters of guardianship were issued. It is claimed by petitioner that these proceedings are void for two reasons:—1. Because no sufficient notice of the hearing was given; and 2. Because the order appointing the guardian requires no bond.

The issues made by the petition, return, and answer thereto are,—1. As to the parentage of the girl; and 2. As to the validity of the guardianship proceedings.

As to the first there is a serious conflict in the testimony introduced at the hearing; as to the second the evidence is without conflict, and only a question of law is presented.

Regarding the claim of Louie Young to be the father of the girl, he showed that he paid her passage from Hong Kong to San Francisco, where she arrived in August, 1900. Upon her arrival he asked her admission to the country on the ground that he was a resident Chinese merchant and that she was his minor child. Her right to land was duly investigated by the customs officials, and she was admitted upon the testi-

mony of Louie Young,—fully corroborated by her in all es-
sential particulars,—to the effect that she was the child of
his first wife, born at Hong Kong a few days before the death
of her mother, and left by him in the care of his family when
he returned to the United States.    After a number of years
he returned to China and was married to a second wife, but
this child remained with his brother's family.    After a year
or two he returned to San Francisco, and, learning shortly
after his arrival that the law permitted his minor child to be
brought in, he sent for her in order to have her near him.
This testimony, given before the customs officials on his appli-
cation for a permit to land, was, as I have said, fully corrobo-
rated in all essentials by the girl, but upon some minor points
called out in the examination there were discrepancies which
evidently excited the suspicions of one of the officers conduct-
ing the examination, but in the end, and upon proof that
Louie Young was a merchant of good repute among his own
countrymen, the order for admission was granted.    Directly
upon her landing Mee Ho was placed by Louie Young in the
family of Louie Ying, where, as they claim, she is regarded as
a member of the family and treated in every respect as a
child of the house.    Louie Ying is a Chinese, but a native of
the United States.    He is a merchant of good repute, and lives
with his family, consisting of a wife and four children, in a
respectable quarter of Chinatown.    He is, as they both claim,
an uncle of Louie Young.    Against this testimony there is
very positive and direct evidence, coming from some of the
ladies connected with the mission, that when the girl first
came to them for protection she was clad in a coarse and
scanty garb, very inferior to the dress of the daughters of
well-to-do Chinese; that when Louie Ying came to take her
back he said she was his servant; and that after her return
she was found nursing a young child of Louie Ying, and in
the apparent position of a servant.    In addition to this evi-
dence, she herself testified on the hearing that her evidence
before the customs officials at the time of her landing was false,
and was given under instructions from Louie Young.    The
truth is, she now testifies, that she is the child of a peasant
family living in a village in the neighborhood of Hong Kong,
by whom she was sold to the family of Louie Young, who

brought her to this country as a servant for Louie Ying. To corroborate this statement it is shown that whereas both the former and present wife of Louie Young had *little feet,* the feet of this girl have never been bound, from which fact it is argued that she must belong to a family of inferior grade, and cannot be Louie Young's daughter. In answer to this Louie Young and Louie Ying both testify that the practice of binding the feet of female children has lately been going out of fashion in China, and that they refrained from binding the feet of this girl because she strongly objected. In this conflict of testimony I find it difficult to come to any satisfactory conclusion upon the question of the girl's parentage, but just because the matter is left so completely enveloped in doubt I should have felt bound to find against Louie Young's claim of paternity—as to which he sustains the burden of proof—if the question was an open one, or if the decision of the case depended on the determination of that question. But if Louie Ying is the duly appointed guardian of the girl's person, his right to her custody, irrespective of the question of parentage, cannot be denied, not only because as guardian of her person he is her legal custodian, but because his appointment involved a determination by a competent tribunal that Louie Young was her father.

It is with considerable reluctance that I have been forced to the conclusion that as against this collateral attack upon the guardianship proceedings their validity must be upheld. The appointment of Louie Ying is valid, if the court had jurisdiction to hear the application, and it had jurisdiction, if the proper parties had due notice. The notice to be given in such cases is prescribed by section 1747 of the Code of Civil Procedure, as follows: "Before making such appointment, the court must cause such notice as such court deems reasonable to be given to any person having the care of such minor, and to such relatives of the minor residing in the county as the court may deem proper." From this it will be seen that the only persons to be notified are those having the care of the minor, and such relatives residing in the county as the court may deem proper. The relatives to be notified, and the length of notice are entirely at the discretion of the judge to whom the petition is presented. Here the petition was pre-

sented on May 28th and the hearing set for May 29th. This was proceeding with greater expedition than I should deem advisable in so important a matter, but no doubt it was considered unnecessary to defer the hearing in view of the fact that the alleged father of the child—the only relative shown to be a resident of the county—joined in the petition. The order setting the matter for hearing also directed personal notice to the father, which was duly given. The order also directed a notice to be posted for five days, but this was evidently a mistake due to the failure of the judge to observe that provision in the blank order handed him for his signature. Being entirely inconsistent with that part of the order fixing the hearing for the following day, it is evident that it was overlooked. Still, if it had been an essential part of the order, it could not be disregarded. But it was in no wise essential. The only persons possibly entitled to notice were the two petitioners. If Louie Young was not the father of the girl, she had no relative in the country. If he was her father, and the court has necessarily so found in granting the petition, her only relative had actual notice, and was present and consenting, and so were the only persons in whose care the girl was. In view of what has been decided by the supreme court in *Smith* v. *Biscailuz,* 83 Cal. 354, this was conclusive in favor of the jurisdiction.

The failure to require a bond of the guardian, if erroneous, was merely an error and not an excess of jurisdiction.

Upon the fullest consideration, I find no ground for changing the provisional order made at the close of the hearing, restoring the custody of Chin Mee Ho, *alias* Louie Mee Ho, to the custody of Louie Ying, as her legally appointed guardian.

The proceeding is dismissed.