AYLLÓN ET AL., PLAINTIFFS AND APPELLEES, *v.* GONZÁLEZ ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of San Juan in an Action of Ejectment.

No. 1950.—Decided February 17, 1920.

PROPERTY OF MINORS—PRESCRIPTION—JUST TITLE—GOOD FAITH.—Just title and good faith are intimately related and a just title arises generally where the transferee believes that the person from whom he takes is the true owner and there was nothing in the record or in the facts known to him to show the defect or to put him on inquiry. Therefore, the purchaser of a property recorded in the names of minors possesses with the just title required by law for prescription if the sale was made by the testamentary guardian by order of the competent district court on the petition of the guardian showing necessity and utility.

ID.—THIRD PERSON.—One who purchases from a person whose title is recorded in the registry is protected unless a defect clearly appears in the registry. The words "result" and "appear" as used in article 34 of the Mortgage Law are synonymous for the purposes of the said law.

ID.—ID.—DEFECTS—REGISTRY OF GUARDIANSHIPS.—The fact that the registry does not show that the guardian had duly qualified by executing his bond,

taking his oath and recording his appointment in the registry of guardianships, does not show an apparent defect which may serve as notice to a third person, for the law does not require a guardian to state such facts in a deed of conveyance.

ID.—ID.—PUBLIC INSTRUMENT—INSTRUMENTAL WITNESSES.—An averment in a complaint of the lack of instrumental witnesses to a deed is unimportant when the plaintiff does not deny the execution of the deed; when the deed must be regarded as a private document in accordance with section 1191 of the Civil Code; when the fact that the deed containing the alleged defect does not imply the nullity of the obligation itself, or when the just title exists independently of the deed.

The facts are stated in the opinion.

*Messrs. Monserrat & Monserrat* for appellants Successors of B. Fernández & Brothers and Ramón González.

*Mr. José de Guzmán Benítez* for appellant Julián Silva.

*Messrs. Félix Córdova Dávila, José Martínez Dávila* and *A. Arnaldo Sevilla* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

According to the theory of the complaint before us the appellees, along with a deceased brother, were the heirs of Pedro Ayllón y Ojeda and inherited the land described in the said complaint. It is alleged that the said Pedro Ayllón, by a will bearing date March 21, 1906, named Ramón González y Fernández tutor of his minor children, the heirs aforementioned, but without relieving the said tutor from the necessity of giving bond; that the said tutor did not accredit his nomination before the proper court, did not give the bond required by law and did not record his nomination in the registry of tutorships as required by law; that Ramón González, acting falsely as tutor of said complainants, without having taken possession of his office, or given the bond or taken the oath required by law, and conspiring with B. Fernández & Brothers, creditors of the complainants, of which firm the Successors of B. Fernández & Brothers are the liquidators, presented a petition to the District Court of San Juan, First Section, asking authority to sell a house which the appellees owned in the ward of Puerta de Tierra of this city; that on the 14th day of November, 1906, the said Gon-

zález, in combination as aforesaid, obtained from the said court an order giving authority to the said tutor to sell at public auction the house and lot in question for not less than $6,000; that in said order of the court the property referred to was not described, nor the terms on which the sale was to be made, nor the date of the same, nor the place of the sale, nor was a publication of the sale ordered, nor yet the time of publication fixed; that the said González, in pursuance of said conspiracy and without availing himself of the marshal, two months after the date of the said order, on January 11 and 12, 1907, published in the *Boletín Mercantil* of this city, alleged in said complaint to be a newspaper of the smallest circulation, a notice saying that two days thereafter, or on January 14, 1907, the said property would be sold in the office of notary Damián Monserrat, who was the attorney of said González; that on the said 14th of January, 1907, the said González appeared before the said notary and proceeded with the auction of said property, the said notary reducing the same to a public deed wherein it appeared that there were no other bidders than B. Fernández & Brothers who offered six thousand dollars therefor, and the property was knocked down to them; that there were no instrumental witnesses to said deed and the only persons who signed the same were the tutor González, B. Fernández & Brothers and the notary; that on August 12, 1912, B. Fernández & Brothers sold the property to Julián Silva, this deed being recorded in the registry of property; that neither González nor the notary took any steps whatever in any form to have the said sale ratified and the court has never had any opportunity to approve the sale; that the property had produced to the date of the complaint the sum of $14,000.

The complaint prays for various nullities, revendication and the payment of the said fourteen thousand dollars.

Although the complaint does not specifically admit it, yet the deed from González to B. Fernández & Brothers was also recorded in the registry of property, and this is the neces-

sary inference or presumption from the record of the deed from B. Fernández & Brothers to Silva, as otherwise the later deed was not entitled to record. The complaint is also silent with regard to the fact that B. Fernández & Brothers were not only creditors, but mortgage creditors with their mortgage duly recorded in the registry of property, and that the sale from González to B. Fernández & Brothers attempted to cancel existing mortgage debts, the amount of such debts being deducted from the price paid by B. Fernández & Brothers.

The answer of B. Fernández & Brothers, among other things, defended the sale as being entirely legal and valid and set up ordinary prescription of ten years, and they filed a reconvention or counterclaim involving the mortgage debts and other debts owing by the testator to said B. Fernández & Brothers. The answer of Silva set up the validity of the sale and the validity of the title of B. Fernández & Brothers, but relied principally on the fact that he was a third person and entirely protected by the previous records of the property as shown by the registry.

The District Court of San Juan rendered judgment declaring in effect that all the muniments of title, as well as the title itself on which appellants relied, were null and void, and these nullities include the sale from the tutor to B. Fernández & Brothers and the sale from B. Fernández & Brothers to Julián Silva. The court also declared null and void the receipt given by B. Fernández & Brothers to the said tutor. The judgment also said that the property in question belonged to the complainants and then proceeded to adjudicate different sums to the various parties to the suit in the mode that the court thought they were lawfully or equitably entitled, depending somewhat upon the mortgage debts owing to B. Fernández & Brothers at the time of the alleged void sale made to them by the said tutor.

Defendants B. Fernández & Brothers and Julián Silva appealed separately.

The charges of fraud, so repeatedly made in the complaint, were not justified by the proof. The fact that the sale was made two days after the last publication and that said publication was only made for two days is the worst feature of the case, but we can not hold that the sale so made was not a public sale, especially in view of the fact that the court fixed a minimum price, and, furthermore, for reasons set out in our decision in the case of *Cortés* v. *Crehore,* 24 P. R. R. 403.

On the question of fraud perhaps an exception should be made by reason of the jurisprudence to the effect that anyone who buys property should be considered as acting in bad faith if the nullity of said transfer may be reasonably inferred from the deed or the registry. This suggestion of fraud, therefore, depends upon the principal question of whether the alleged invalidities could be reasonably deduced from the deeds or the record, and independently of this the question of fraud needs no consideration on this appeal. Whether appellants B. Fernández & Brothers had actual or constructive notice of the defects in the sale to them is another question.

When B. Fernández & Brothers took a deed from the said tutor record of the property in the name of the minor heirs had already been made in the registry of property as well as of the fact that Ramón González was the testamentary tutor of said minor children. The appellees insist that the attorney for Ramón González was Damián Monserrat and that the attorney for B. Fernández & Brothers was the said Damián Monserrat, and that the knowledge of all the alleged nullities was therefore chargeable to B. Fernández & Brothers. This involves a fallacy. Unless the attorney acting for both parties communicated any personal knowledge he might have had to his clients B. Fernández & Brothers, we cannot see that his principals are chargeable with any such knowledge. Notice to an attorney has certain well defined limits which we shall not discuss. B. Fernández & Brothers, so

far as any defect existing before their alleged purchase from said tutor is concerned, must be treated like any other innocent purchaser.

The appellees and the court rely principally for the alleged invalidity of the acts of the tutor on three defects: First, that his tutorship was never recorded in the registry of tutorships as required by law; second, that he never made an oath of office, and, third, that he never gave bond for the good results of his management, as required by section 270 of the Civil Code.

Appellants B. Fernández & Brothers insist on the absolute validity of the sale from the tutor to B. Fernández & Brothers. There is considerable law to the effect that a sale of minors' property by a probate court is a judicial sale. There is a corresponding amount of authority holding that the title of a purchaser at a judicial sale is protected from a collateral attack. Likewise, it is pretty well settled that a suit of the kind brought here is a collateral attack. But we do not base our decision on these grounds.

In the United States, as in Porto Rico, a father may appoint a testamentary guardian over his minor children and the authorities are conflicting as to whether a testamentary guardian must not qualify specially by giving bond before he shall be considered legally a tutor. 21 Cyc. 46, note 98; *Hatch* v. *Ferguson,* 33 L. R. A. 759; *In re Chin Mee Ho,* 73 Pac. Rep. 1002, 140 Cal. 263; *Ex Parte Maxwell,* 79 Am. Dec. 62. This question of a bond is frequently correlated with the necessity of an executor or administrator giving a bond, for which see 11 R. C. L., 57 *et seq.* We are inclined to believe that the better reason is with the authorities that hold that the acts of a tutor who is not qualified are not void but merely voidable, but we shall not attempt to analyze the authorities.

The court below laid stress on the failure of the tutor to record his tutorship in the registry of tutorships. We feel bound to hold that to-day, the district court having been sub-

stituted for the family council, the failure to record is not a
fatal defect, especially in the absence of any showing how
any one would be injured by the failure to make such record.
We do not see how, if a tutor qualifies otherwise by taking
an oath and giving a bond, the interests of any one could
suffer and especially the interests of the wards.

We treat these matters in passing, inasmuch as B. Fer-
nández & Brothers have also set up a title by ordinary pre-
scription of ten years with a just title and good faith. The
Supreme Court of the United States, in a similar case, was
doubtful whether a transfer was absolutely valid, but pre-
ferred to base its decision upon the question of whether a
just title could exist. *Texas & Pacific Railway Co.* v. *Smith,*
159 U. S. 69. This court has discussed the question of just
title so often that it seems unnecessary to review all the
authorities. One of the most recent declarations is in the
case of *Martorell et al.* v. *J. Ochoa & Bro. et al.,* 26 P. R. R.
636, and while the court differed in its application of the
law there was no difference of opinion on the definition of
what constitutes a just title. A just title is necessarily less
than a perfect title. It has been frequently held that where
defects of form are apparent no just title can arise. Sim-
ilarly, no just title can arise where there was no authority
in the person making the transfer, and the transferees were
bound to know of such lack of authority. *Hayes* v. *United
States,* 170 U. S. 650, 651. Where the defect is latent or
occult, as some of the decisions say, a just title may arise.
Just title and good faith are intimately related and a just
title arises generally where the transferee believes that the
person from whom he takes is the true owner and there was
nothing in the record or in the facts known to him to show
the defect or to put him on inquiry. Here the record showed
that González had been named tutor of the minor children
and their title to the property had been recorded in the reg-
istry of property. Likewise there existed an order of the
District Court of San Juan authorizing the said tutor to

make the sale. This order of the court is the most powerful thing in favor of a just title. It is a matter of justice and common sense that any one seeing an order of a district court having jurisdiction over the minors and over the tutor would assume that the court made its order after satisfying itself that the formalities of the law had been satisfied. The importance of the district court is made more evident when it appears from the decisions that in sales of intestate property or minors' property it is the court, as a sort of a *parens patriae*, by whom the sale is made; that the sale is made rather by public authority than by private transfer. Hence, where the court has jurisdiction of the parties and of the subject-matter, the sale, while voidable, cannot be considered as absolutely void and is sufficient on which to base a just title. The appellees, if they were right in their contention that the appointment and acts of the tutor were voidable, could, we think, have set the sale aside if they had made a direct application to the court at any time within ten years after the date of such sale. Having failed to do so, prescription runs in favor of B. Fernández & Brothers.

The situation of Julián Silva is even stronger. He is not only entitled to the benefit of the prescription in favor of B. Fernández & Brothers, but he was also a third person. When he bought from B. Fernández & Brothers their title was recorded in the registry of property.

Sections 33 and 34 of the Mortgage Law are as follows:

"Art. 33.—Instruments or contracts which are null under the law are not validated by their admission to record.

"Art. 34.—Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry."

We understand section 33 to mean that a deed already void gains no strength by its record in the registry of property. In other words, if it is void or voidable it continues to remain so. Section 34, however, is one of the main sections of the Mortgage Law which protects the rights of third persons. One who buys from a person whose title is recorded in the registry of property is protected unless a defect clearly appears in the registry of property. *People* v. *Riera*, 27 P. R. R. 1; *Sánchez* v. *Hartzell et al.*, 26 P. R. R. 620. The court below makes some point on the difference between the words "appear" and "result" as used in the said section. We think that the two words are synonymous for the purposes of this law and force is given to this view by the fact that in the War Department translation the word *"resultar"* is translated "appear."

Some of the principal reasoning of the court is found on page 42 of the record, wherein the court apparently holds that the tutor should have made it appear in the registry that he had qualified. We know of no precept of the law that requires a tutor to say in his deed of transfer that he is duly qualified and especially no authority of the law makes it necessary for him to specify that he has taken his oath, executed his bond and recorded his tutorship in the appropriate registry. We fail to see how the fact that González had not qualified appeared clearly from the registry. On the contrary, given the order of the court authorizing the sale, a third person going to the registry would have a right to presume that any prerequisites for the tutorship had been performed by the tutor. A person who buys from one who has his title already recorded is not obliged to examine with a microscope, so to speak, all the records; but the defect must be reasonably apparent. In this case the alleged defect escaped the attention of the attorneys in the case, of the District Court of San Juan, of Julián Silva and of the registrar himself. This is only a minor argument, but it

tends to show that the defect did not appear clearly from the registry.

The appellees attempt to make a distinction in favor of their clients by reason of the fact that their title was recorded in the registry of property, and hence that they were excluded from the operation of the last part of section 34, protecting third persons against a "prior deed not recorded," or "for reasons which do not clearly appear from the registry." These words are placed in the disjunctive. The appellees, in reality, do not base their claim on a "prior deed not recorded," but on "reasons which do not appear clearly from the registry."

One other matter alleged in the complaint may be noted. The averment of the lack of instrumental witnesses has no importance here, first, because the appellee does not deny the the execution of the contract; indeed the contrary is presupposed; second, because the deed, in any event, must be regarded as a private document in accordance with section 1191 of the Civil Code; third, because the fact that the deed contains the alleged defect does not imply the nullity of the obligation in itself. *Picart* v. *De León,* 22 P. R. R. 553. Fourth, because the just title exists independently of the deed.

The judgment must be reversed and the complaint dismissed.

*Reversed.*

Chief Justice Hernández and Justices del Toro and Hutchison concurred.

Mr. Justice Aldrey took no part in the decision of this case.