Ayllón y Ojeda et al., Demandantes y Apelados, v. González y Fernández et al., Demandados y Apelantes.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre nulidad de venta judicial y reivindicación.

No. 1950.—Resuelto en febrero 17, 1920.

Prescripción—Justo Título—Buena Fe.—El justo título y la buena fe están íntimamente relacionados y generalmente surge el justo título cuando aquel a quien se hace el traspaso cree que la persona de quien adquiere es el verdadero dueño y no existe nada en la inscripción o en los hechos que conocía que mostraran el defecto o le impusieran el deber de investigar. Así, pues, posee con el justo título que la ley requiere para la prescripción, el comprador de una finca inscrita a favor de menores, cuya venta, realizada por el tutor testamentario, había sido ordenada por la corte de distrito competente a petición de éste y previo expediente de utilidad y necesidad.

Tercero.—Una persona que adquiere de otra cuyo título está inscrito en el registro queda protegida a no ser que resulte claramente de la inscripción el defecto del título. Las palabras "resulten claramente," usadas en el artículo 34 de la Ley Hipotecaria, son sinónimas de "aparezcan claramente," a los fines de dicha ley.

Tercero—Causas de Nulidad que no Resultan de la Inscripción—Registro de Tutela.—La circunstancia de que en la inscripción no conste que el tutor entró debidamente en posesión del cargo, que había prestado fianza y juramento e inscrito su nombramiento en el registro de tutelas, no demuestra una causa aparente de nulidad que sirva de aviso al tercero, pues la ley no exige que el tutor consigne tales requisitos en la escritura de traspaso.

Escritura Pública—Testigos Instrumentales.—La alegación que se hace en una demanda relativa a la falta de testigos instrumentales en una escritura no es importante cuando el demandante no niega el otorgamiento del contrato, cuando en todo caso el documento podría considerarse como documento privado de acuerdo con el artículo 1191 del Código Civil, cuando el hecho de que la escritura contiene el supuesto defecto no implica la nulidad de la obligación en sí y cuando existe el justo título independientemente de la escritura.

Los hechos están expresados en la opinión.

Abogados de los apelantes B. Fernández y Hermanos, Sucrs. y Ramón González: *Sres. Monserrat y Monserrat.*

Abogado del apelante Julián Silva: *Sr. José de Guzmán Benítez.*

Abogados de los apelados: *Sres. Félix Córdova Dávila, José Martínez Dávila y Alfredo Arnaldo Sevilla.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Según la teoría de la demanda sometida a nuestra consideración, los apelados en unión de un hermano fallecido eran los herederos de Pedro Ayllón y Ojeda y heredaron la finca que se describe en dicha demanda; que dicho Pedro Ayllón, en testamento que lleva fecha marzo 21, 1906 designó a Ramón González y Fernández como tutor de sus menores hijos, o sean los herederos arriba descritos, pero sin relevación de fianza; que dicho tutor no acreditó su nombramiento ante la debida corte ni prestó la fianza exigida por la ley, ni tampoco inscribió su nombramiento en el registro de tutelas como prescribe la ley; que Ramón González actuando falsamente como tutor de dichos demandantes sin haber tomado posesión de su cargo, prestado fianza o tomado el juramento exigido por la ley y en confabulación con B. Fernández y Hermanos, acreedores de los demandantes, de cuya firma B. Fernández y Hermanos, Sucesores, son los liquidadores, presentó una solicitud a la Corte de Distrito de San Juan, Sección Primera solicitando autorización para vender una casa que los apelados poseían en el barrio de Puerta de Tierra de esta ciudad; que el día 14 de noviembre de 1906 el referido González, actuando en confabulación como queda dicho, obtuvo una orden de dicha corte autorizando al expresado tutor para vender en pública subasta la casa y solar en cuestión por cantidad no inferior de seis mil dólares; que en la referida orden de la corte no se describió la finca objeto de la autorización judicial, no se fijaron los términos en que debía llevarse a cabo la subasta, ni se señaló la fecha de la misma, ni el sitio donde debía llevarse a efecto, ni se ordenó la publicación de la venta y fijó el plazo de la misma; que el expresado González, de acuerdo con dicha conspiración y sin valerse del márshal, dos meses después de la fecha en que se concedió dicha autorización, en enero 11 y 12 de 1907, publicó en el periódico "Boletín Mercantil" de esta ciudad, que en dicha demanda se alega es un periódico de los de me-

nos circulación, un aviso haciendo saber que dos días después, o sea en 14 de enero de 1907 se llevaría a cabo la venta en pública subasta de dicha finca en la notaría de Damián Monserrat, que era el abogado de González; que en el referido día 14 de enero de 1907 compareció dicho·González ante dicho notario y procedió a la celebración de la subasta de la finca, levantándose por dicho notario un acta de escritura pública de la cual aparece que no hubo más licitadores que los demandados B. Fernández y Hermanos que ofrecieron seis mil dólares como precio de la finca, adjudicándosele a ellos la buena pró; que la escritura pública fué autorizada sin la presencia de testigos instrumentales, firmándola solamente el tutor González, B. Fernández y Hermanos y el notario. que en agosto 12, 1912 B. Fernández y Hermanos vendieron la finca a Julián Silva, habiéndose inscrito esta escritura de venta en el registro de la propiedad; que ni González ni el notario tomaron ninguna medida en forma alguna para que dicha venta fuese ratificada y que la corte jamás ha tenido oportunidad de aprobar dicha venta; que la finca había producido a la fecha en que se presentó la demanda la suma de catorce mil dólares.

En la demanda se solicitan varias nulidades, la reivindicación de la finca y el pago de los expresados catorce mil dólares.

Si bien la demanda no lo admite específicamente, sin embargo la escritura de González a favor de Fernández y Hermanos también fué inscrita en el registro de la propiedad, y esta es la consecuencia necesaria o presunción de la inscripción de la escritura de Fernández y Hermanos a favor de Silva, pues de otro modo la escritura posterior no hubiera podido ser inscrita.  Nada se dice tampoco en la demanda acerca del hecho de que B. Fernández y Hermanos no solamente eran acreedores, sino acreedores hipotecarios con su hipoteca debidamente inscrita en el registro de la propiedad y que la venta de González a favor de B. Fernández y Hermanos tenía por objeto cancelar los créditos hipotecarios

existentes, deduciéndose el importe de dichas deudas del precio satisfecho por B. Fernández y Hermanos.

En la contestación de B. Fernández y Hermanos, entre otras cosas, se defendía la venta por ser completamente legal y válida y alegaba la prescripción ordinaria de diez años y radicaron además una reconvención o contrademanda que comprendía las deudas hipotecarias y otras que debía el testador a dichos B. Fernández y Hermanos. En la contestación de Silva se alegaba la validez de la venta, la del título de B. Fernández y Hermanos, pero se fundó principalmente en el hecho de que él era un tercero y estaba completamente protegido por las anteriores inscripciones de la propiedad según aparecía del registro.

La Corte de Distrito de San Juan dictó sentencia declarando en efecto que todas las evidencias del título así como el título mismo en que los apelantes confiaban eran nulos y sin ningún valor, comprendiendo estas nulidades la venta hecha por el tutor a B. Fernández y Hermanos y la de B. Fernández y Hermanos a Julián Silva. También declaró la corte nula y sin ningún valor la carta de pago otorgada por B. Fernández y Hermanos a dicho tutor. Declaraba también la sentencia que la propiedad en cuestión pertenecía a los demandantes, pasando entonces a distribuir diferentes sumas a las distintas partes en el pleito, en la forma en que la corte las consideró con derecho, de acuerdo con la ley, basándose en parte en los créditos hipotecarios que se debían a B. Fernández y Hermanos en la fecha de la venta que se alega es nula y que a ellos hizo el tutor.

Los demandados B. Fernández y Hermanos y Julián Silva interpusieron apelaciones separadamente.

Los cargos de fraude que tan repetidamente se hacen en la demanda no fueron justificados por la prueba. El hecho de que la venta se llevó a cabo dos días después del último aviso y de que el referido aviso solamente se hizo por dos días es el aspecto peor del caso, pero no podemos sostener que la venta así efectuada no fué una venta en pública su-

basta especialmente en vista del hecho de haber fijado la corte un precio mínimo y además por las razones consignadas en nuestra opinión en el caso de *Cortés* v. *Crehore*, 24 D. P. R. 430.

Respecto a la cuestión de fraude tal vez debiera hacerse una excepción en vista de la jurisprudencia al efecto de que cualquier persona que compre bienes se considerará que procede de mala fé si puede inferirse razonablemente de la escritura o del registro la nulidad de dicho traspaso. Por consiguiente esta sugestión de fraude depende de la cuestión principal de si las nulidades alegadas podían o no deducirse razonablemente de las escrituras o inscripciones, e independientemente de esto la cuestión de fraude no requiere consideración alguna en esta apelación. El hecho de que los apelantes B. Fernández y Hermanos tuvieran o no conocimiento anterior o procedente de las constancias de los autos o del registro (*constructive notice*) de los defectos de la venta a favor de ellos es otra cuestión.

Cuando B. Fernández y Hermanos recibieron la escritura de dicho tutor la inscripción de la finca a nombre de los menores herederos ya había sido hecha en el registro de la propiedad así como en cuanto al hecho de que Ramón González era el tutor testamentario de dichos menores hijos. Insisten los apelados en que el abogado de Ramón González era Damián Monserrat y el de B. Fernández y Hermanos era el dicho Damián Monserrat y que por consiguiente debía imputarse conocimiento de las supuestas nulidades a B. Fernández y Hermanos. Esto envuelve una falacia.[1] A menos que el abogado que actuaba a nombre de ambas partes hubiera comunicado cualquier conocimiento personal que hubiera podido obtener a sus clientes B. Fernández y Hermanos, no vemos cómo puede imputarse a sus principales tal conocimiento. El aviso a un abogado tiene ciertos límites bien definidos que no discutiremos. B. Fernández y Hermanos deben ser considerados como cualquier otro comprador

---

[1] Lenguaje filosófico.

de buena fé en tanto en cuanto concierna a cualquier defecto existente antes de su supuesta compra a dicho tutor.

Los apelados y la corte se fundan principalmente para la supuesta nulidad de los actos del tutor en tres defectos: primero, que su tutela nunca fué inscrita en el registro de tutelas como lo exige la ley; segundo, que jamás prestó juramento de su cargo; y tercero, que nunca prestó fianza para el buen resultado de su gestión como exige el artículo 270 del Código Civil.

Los apelantes B. Fernández y Hermanos insisten en la validez absoluta de la venta hecha por el tutor a B. Fernández y Hermanos. Hay mucha jurisprudencia que sostiene que la venta de bienes de menores por una corte que entiende en asuntos de testamentaría (*probate court*) es una venta judicial. Existen otras tantas autoridades que sostienen que el título de un comprador en subasta pública está protegido contra cualquier ataque colateral. De igual modo está bastante bien establecido que una acción de la naturaleza de la aquí establecida es un ataque colateral. Pero no basamos nuestra decisión en estos fundamentos.

En los Estados Unidos como en Puerto Rico, un padre puede nombrar un tutor testamentario para sus hijos menores de edad estando en conflicto las autoridades respecto al punto de si un tutor testamentario, para que se le defiera la tutela, tiene o no necesidad de prestar fianza antes de ser considerado legalmente como tutor. 21 Cyc. 46, nota 98; *Hatch v. Férguson*, 33 L. R. A. 759; *In re Chin Mee Ho.* 73 Pac. Rep. 1002, 140 Cal. 263; *Ex parte Maxwell*, 79 Am. Dec. 62. Esta cuestión de la fianza frecuentemente lleva consigo la necesidad de que un albacea o administrador preste fianza, respecto a lo cual véase el tomo 11 de R. C. L. págs. 57 y siguientes. Nos inclinamos a creer que el mejor razonamiento está de parte de las autoridades que sostienen que los actos de un tutor que no ha entrado en posesión de su cargo no son nulos sino meramente anulables, pero no trataremos de analizar las autoridades.

La corte inferior hizo insistencia en el hecho de haber dejado el tutor de inscribir su tutela en el registro de tutelas. Nos vemos obligados a declarar que habiendo sido sustituído hoy por la corte de distrito el consejo de familia el no hacerse la inscripción no es un defecto fatal, particularmente a falta de algo que demuestre de qué modo podría ser perjudicado alguien por el hecho de no verificarse tal inscripción. No vemos cómo si un tutor entra de otro modo en posesión de su cargo prestando juramento y dando fianza podían perjudicarse los intereses de alguna persona y especialmente los intereses de los pupilos.

Consideramos estas cuestiones de paso puesto que B. Fernández y Hermanos también han alegado un título adquirido por prescripción ordinaria de diez años con justo título y buena fé. La Corte Suprema de los Estados Unidos, en un caso semejante estuvo dudosa respecto a si un traspaso era o no absolutamente válido, pero prefirió fundar su decisión en la cuestión de si podía existir o no un justo título. *Texas & Pacific Railway Co.* v. *Smith,* 159 U. S. 69. Esta corte ha discutido la cuestión de justo título tan a menudo que creemos innecesario revisar todas las autoridades. Una de las más recientes de sus declaraciones es la del caso de *Martorell et al.* v. *J. Ochoa y Hermano et al.,* 26 D. P. R. 700, y aunque la corte no fué de opinión unánime en la aplicación de la ley no hubo diferencia de criterio sobre la definición de lo que constituye un justo título. El justo título es necesariamente algo menos que un título perfecto. Se ha resuelto frecuentemente que cuando los defectos de forma son aparentes no puede surgir ningún justo título. Asimismo no puede surgir justo título alguno sino existía capacidad en la persona que hizo el traspaso y si las personas a favor de quienes el traspaso se hizo estaban obligadas a saber que no existía tal capacidad. *Hayes* v. *U. S.,* 170 U. S. 650, 651. Cuando el defecto está escondido u oculto como expresan algunas de las decisiones, puede surgir el justo título. El justo título y la buena fé están íntimamente relacionados y generalmente

surge el justo título cuando aquel a quien se hace el traspaso cree que la persona de quien adquiere es el verdadero dueño y no existía nada en la inscripción o en los hechos que conocía que mostraran el defecto o le impusieran el deber de investigar. En este caso los autos revelaban que González había sido nombrado tutor de los menores hijos y que el título de éstos a la propiedad había sido inscrito en el registro de la propiedad. Asimismo existía una orden de la Corte de Distrito de San Juan autorizando al referido tutor para hacer la venta. Esta orden de la corte es la cosa más poderosa a favor del justo título. Es cuestión de justicia y de sentido común que cualquier persona que ve una orden de una corte de distrito que tiene jurisdicción sobre los menores y el tutor, supondría que la corte dictó su orden después de convencerse de que se habían cumplido las formalidades exigidas por la ley. La importancia de la corte de distrito resulta más evidente cuando aparece de las decisiones que en las ventas de bienes de finados o de menores es la corte, haciendo las veces de *parens patriae* por quien se hace la venta; que dicha venta se verifica más bien por la autoridad pública que por el traspaso de un particular. Por consiguiente, cuando la corte tiene jurisdicción de las partes y de la materia objeto de la controversia, la venta, aunque anulable, no puede ser considerada como absolutamente nula y es suficiente para basar en ella un justo título. Si tuvieran razón los apelados en la alegación que hacen de que el nombramiento y actos del tutor eran anulables creemos que pudieran haber obtenido la nulidad de la venta de haber hecho una solicitud directa a la corte en cualquier momento dentro de los diez años después de la fecha de la referida venta. No habiéndolo hecho así, la prescripción corre a favor de B. Fernández y Hermanos.

La posición de Julián Silva aun es más fuerte. No solamente tiene el derecho al beneficio de la prescripción a favor de B. Fernández y Hermanos, sino que también era un tercero. Cuando él compró a B. Fernández y Hermanos el título de éstos estaba inscrito en el registro de la propiedad.

Los artículos 33 y 34 de la Ley Hipotecaria prescriben lo siguiente:

"Art. 33.—La inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes."

"Art. 34.—No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo registro."

Interpretamos el artículo 33 en el sentido de significar que una escritura que ya es nula no adquiere fuerza alguna por el hecho de su inscripción en el registro de la propiedad. En otras palabras, si es nula o anulable, continúa siéndolo. Sin embargo, el artículo 34 es uno de los principales artículos de la Ley Hipotecaria que protege los derechos de terceros. Una persona que adquiere de otra cuya título está inscrito en el registro está protegida, a no ser que exista un claro defecto en el registro de la propiedad. *El Pueblo* v. *Riera.* 27 D. P. R. 1; *Sánchez* v. *Hartzell et al.,* 26 D. P. R. 684. La corte inferior hace cierta insistencia en cuanto a la diferencia que existe entre las palabras "aparezcan" y "resulten", tal como se usan en el referido artículo. Entendemos que las dos palabras son sinónimas para los fines de esta ley, criterio que está robustecido por el hecho de que en la traducción hecha por el Departamento de la Guerra, la palabra "resultar" ha sido traducida por "appear".

Una parte del razonamiento principal de la corte consta en la página 42 de los autos, donde la corte sostiene al parecer que el tutor debió haber hecho constar en el registro que había entrado en posesión de su cargo. No conocemos ningún precepto legal que exija al tutor hacer constar en su escritura de traspaso que ha entrado debidamente en posesión de su cargo y particularmente ningún precepto de la ley requiere que el tutor especifique que ha prestado juramento, otorgado fianza e inscrito su nombramiento de tutor en el

registro correspondiente. No podemos ver cómo podía aparecer claramente del registro el hecho de que González no había entrado en posesión de su cargo. Por el contrario, dada la orden de la corte autorizando la venta, un tercero que va al registro tendría derecho a suponer que el tutor había cumplido cualesquiera requisitos previos para el ejercicio de su tutela. Una persona que adquiere de otra que ya tiene inscrito su título no está obligada a examinar con el microscopio, por así decirlo, todas las inscripciones, sino que el defecto debe ser razonablemente aparente. En este caso el supuesto defecto pasó desapercibido a los abogados del caso, a la Corte de Distrito de San Juan, a Julián Silva y al mismo registrador. Este es solamente un argumento de poca importancia pero tiende a mostrar que el defecto no aparecía claramente del registro.

Los apelados tratan de establecer una distinción a favor de sus clientes basados en el hecho de que su título estaba inscrito en el registro de la propiedad y, por tanto, estaban exentos de la aplicación de la última parte del artículo 34 que protege a terceros contra "un título anterior no inscrito" o "por causas que no resulten claramente del registro". Estas palabras han sido usadas en forma disyuntiva. Los apelados, en realidad, no fundan su alegación en "un título anterior que no ha sido inscrito" sino en "causas que no resultan claramente del mismo registro".

Debe tenerse en cuenta otro punto que ha sido alegado en la demanda. La alegación de falta de testigos instrumentales en la escritura de venta no es de importancia en el presente caso: primero, porque la parte apelada no niega la celebración del contrato y antes por el contrario es un supuesto de la cuestión litigiosa; segundo. porque la escritura tendría en este caso el concepto de documento privado con arreglo al artículo 1191 del Código Civil; tercero, porque el hecho de que la escritura adolezca del defecto expresado no implica que la transación en su origen estuviera viciada de nulidad. *Picart* v. *de León.* 22 D. P. R. 592; y más especial-

mente; cuarto, porque el justo título para la prescripción subsiste independientemente de la escritura.

Debe revocarse la sentencia apelada y desestimarse la demanda.

> *Revocada la sentencia apelada y desestimada la demanda sin especial condenación de costas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Hutchison.

El Juez Asociado Sr. Aldrey no tomó parte en la resolución de este caso.