José Joaquín Vives y García y Orozco y Luisa Vives y Capó, demandantes y apelantes, *v.* Los Socios Desconocidos de la Extinta Sociedad Sucn. Amorós Hnos., Rafael Amorós Alsina; La Sucn. de Guillermo McCormick, Etc.; La Sucn. de Juan Carlos McCormick, Etc.; A. Hartman & Co.; La Sucn. de Francisco y José Ramón Vives Rivera; Ramón y Consuelo Vives Rivera; Ana Orozco Vda. de Cestero y la Sociedad Luce & Co., representada por W. M. Wood., demandados y apelados.

No. 3379.—*Visto:* Diciembre 18, 1924. *Resuelto:* Abril 23, 1925.

1. Sentencias—Alegación y Prueba de Sentencia como Impedimento (*Estoppel*) o Defensa—Sentencia Anterior Dictada no Sobre los Méritos.— Una acción que no ha sido resuelta en su fondo, sino a virtud de sentencia dictada por no haberse enmendado la demanda dentro del término concedido luego de haberse declarado con lugar una excepción previa que no afectaba los méritos del caso, no puede producir el efecto de cosa juzgada.

2. Sentencias—Alegación y Prueba de Sentencia como Impedimento (*Estoppel*) o Defensa—Modificación de Doctrina en que se Basó la Sentencia Anterior no Destruye la Cosa Juzgada.—Existiendo entre dos acciones los requisitos todos que integran la cosa juzgada, el hecho de que la doctrina a virtud de la cual fué desestimada la primera acción sea más tarde modificada por el Tribunal Supremo, no puede destruir la excepción de cosa juzgada.

3. Marido y Mujer—Bienes Gananciales—Derecho del Cónyuge Superviviente a Vender su Participación—Derechos del Comprador en su Carácter de Tercero Hipotecario.—Tienen el carácter de terceros hipotecarios y por tanto derecho a lo que se infiere de los artículos 33 y 34 de la Ley Hipotecaria aquellos que adquieren de uno que compró de persona que del registro tenía capacidad para vender, cuando del mismo registro no constan afirmativa y claramente los hechos que se alegan para solicitar la nulidad de dichas compraventas.

4. Descendencia y Distribución—Derechos y Responsabilidades de los Herederos—Venta Hecha por Heredero o Esposo Superviviente.—Un heredero o esposo superviviente puede traspasar su participación en una propiedad sin haberse hecho la liquidación o partición de herencia.

5. Prescripción—Justo Título—Cuándo no Surge a Favor de Persona que Adquiere.—A los efectos de la prescripción adquisitiva, cuando del registro consta afirmativa y claramente un hecho, no surge un justo título a favor de la persona que adquiere.

Sentencia de *G. Castejón*, J. (Guayama), declarando sin lugar la demanda, sin costas. *Confirmada.*

*Celestino Domínguez Rubio,* abogado del apelante; *José y M. Tous Soto,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Como en la opinión emitida por escrito por la corte inferior los hechos principales están bien resumidos y la ley, según la entendemos, en lo principal está bien presentada, reproducimos la referida opinión. Dice así:

"La acción ejercitada en este caso es una sobre nulidad de compraventas y reconocimiento de condominios y otros extremos, a la que sirven de base como hechos esenciales los siguientes:

"Que doña Isabel Rivera Texidor casada con don Juan Vives de la Rosa era dueña de la mitad de la hacienda 'Esperanza' sita en barrio Machete de Guayama la que se describe en la demanda, habiendo adquirido dicho condominio en la forma siguiente: dos sextas partes por herencia de sus abuelos Jacinto Texidor Mayor y Casimira Moreno y otra sexta parte por compra a su hermana Vicenta Rivera Texidor por escritura de tres de febrero de 1854.

"Que las adquisiciones de tales condominios lo fueron siendo la referida doña Isabel Rivera casada con su esposo don Juan Vives de la Rosa.

"Que al adquirir dicha porción de terreno doña Isabel Rivera, existía en dicha hacienda solamente un pequeño trapiche de bueyes y una azucarería pequeña, todo de escaso valor, habiéndose hecho durante la posesión por parte de los esposos Vives Rivera en dicha finca mejoras en la misma (que se describen) las cuales en cuanto a la mitad de la finca tienen un valor de treinta mil dólares.

"Que pocos días después del fallecimiento de don Juan Vives de la Rosa su viuda doña Isabel Rivera sin haberse practicado la división del caudal relicto, desprovista de título de propiedad y por medio de su apoderado José Vives Rivera vendió a la mercantil Amorós Hermanos la referida mitad de la finca en cuestión y entre ella el condominio de una sexta parte que pertenecía a la sociedad de gananciales, cuya venta tuvo lugar por escritura de siete de abril de 1892 y se inscribió en el registro de la propiedad no obstante aparecer de las inscripciones la adquisición por la poderdante en estado casada y su venta siendo viuda, habiéndose hecho constar además en la escritura y en la inscripción la existencia de mejoras sobre dicho fundo.

"Que por escritura de cinco de junio de 1902 la extinguida sociedad Amorós Hermanos adjudicó a su socio don Rafael Amorós Alcina la referida hacienda 'Esperanza' y éste a su vez y en escritura de 11 de julio de 1906 vendió dicha propiedad a don Juan

Carlos y don Guillermo McCormick quienes tenían conocimiento de que existía una reclamación sobre dicha finca por parte de la sucesión de don Juan Vives de la Rosa.

"Que fallecido don Guillermo McCormick su sucesión en unión del otro condómine don Juan Carlos McCormick traspasaron la propiedad y posesión de la hacienda 'Esperanza' a la sociedad A. Hartmann & Co. por escritura de 25 de agosto de 1910 a quienes constaba también la reclamación de la sucesión Vives.

"Que don Ramón, don José y doña Consuelo Vives Rivera, miembros de dicha sucesión otorgaron una escritura de transacción a favor de Hartmann & Co. renunciando todas las acciones reales y personales que pudieran tener o corresponderles como herederos de don Juan Vives de la Rosa sobre dicha hacienda 'Esperanza' compareciendo también doña Ana García de Orozco madre del entonces menor José Joaquín Vives García y Orozco demandante en este caso y que por escritura de 20 de junio de 1920 Hartmann & Co. vendió dicha finca a Luce & Co., S. en C.

"Se alega además por el demandante el fallecimiento de doña Isabel Rivera, así como las personas que forman su sucesión o sean sus hijos Luis Francisco, Juan José Ramón, Ramón y Consuelo de los cuales fallecieron siendo solteros sin sucesión Francisco y José habiendo también fallecido Juan y Luis formando la sucesión de éstos respectivamente sus hijos José Joaquín Vives García y Orozco y Luisa Vives Capó los actuales demandantes, viviendo actualmente Ramón y Consuelo Vives Rivera hechos partes demandadas en la presente acción.

"La demanda termina con la súplica de que se declaren nulas todas las trasmisiones de la hacienda 'Esperanza' a partir de la venta hecha por doña Isabel Rivera Texidor a la mercantil Amorós Hermanos y la escritura de transacción de ciertos herederos a que ya nos hemos referido y en su virtud se condene a Luce & Co. a reconocer a favor de los demandantes un condominio en la hacienda 'Esperanza' equivalente a dos sextas partes del total de la misma y a más una parte igual de las mejoras hechas en la ameritada propiedad.

"Comparecieron a contestar la demanda la sucesión de don Guillermo y don Juan Carlos McCormick y las sociedades Hartmann & Co. y Luce & Co., S. en C.

"La contestación niega los hechos de la demanda con excepción del marcado con el número 17 que se refiere a la adquisición de la hacienda 'Esperanza' por parte de Luce & Co., S. en C., y como defensa alegan los demandados las siguientes:

"Excepción previa general de falta de hechos fundada en la prescripción de la acción de nulidad y a más en la prescripción adquisitiva.

"La defensa de tercero hipotecario en favor de Luce & Co. y la defensa de cosa juzgada (*res judicata*).

"Las pruebas presentadas por las partes en este caso son de carácter documental en su mayoría pues declaró únicamente por parte de los demandantes la señora doña Dolores Capó viuda de Vives.

"Tal prueba está formada por una certificación del Registro de la Propiedad contentiva de todos los asientos existentes en el mismo y relativos a la hacienda 'Esperanza', certificaciones de defunción de doña Isabel Rivera Texidor, Juan Vives de la Rosa, Luis, Juan y Francisco Vives y Rivera y las de nacimiento de José Joaquín Vives y García de Orozco y Luisa Engracia Gumersinda Isabel Vives Capó, los demandantes en este pleito, y a más certificación del matrimonio de Juan Vives de la Rosa con doña Isabel Rivera Texidor celebrado en seis de septiembre de 1852, así como certificación de ciertas constancias de los pleitos resueltos entre las propias partes y marcados con los números 253 y 3270 del Registro de causas civiles.

"Consideraremos primero las cuestiones legales antes de entrar en el fondo de esta cuestión si bien alteraremos el orden en que las mismas han sido planteadas.

"*Tercero hipotecario.*—La contención en este caso estriba en el conocimiento que según los datos del registro pudieran tener los adquirentes de doña Isabel Rivera en cuanto al carácter de los bienes objeto de la transacción.

"El demandante sostiene que del registro aparece que doña Isabel Rivera al adquirir el condominio de su hermana hecho ocurrido en tres de febrero de 1854 era ya casada con don Juan Vives de la Rosa.

"Este hecho ha sido probado ante nosotros por el acta de matrimonio de dichos esposos el cual tuvo lugar en seis de septiembre de 1852.

"Pero si examinamos la primera inscripción en el Registro relativa a la finca 'Esperanza' veremos que tal extremo no aparece de la misma.

"En ella no hace constar que los esposos Vives Rivera son dueños de la 'Esperanza' y la forma de adquisición de las participaciones de doña Isabel y entre ellas las del condominio de una sexta parte adquiridas de su hermana Vicenta en tres de febrero de

1854 pero en modo alguno aparece el estado civil de doña Isabel Rivera en esta época o sea a la fecha de la adquisición.

"En cuanto al extremo de que doña Isabel Rivera vendió dicho condominio en estado de viudés, (véase la inscripción II), tampoco consta de la misma el referido extremo habiéndolo omitido el Registrador al expresar el estado civil de doña Isabel Rivera al hacer la trasmisión.

"Pero aún en el supuesto caso de que en el registro constara el estado civil de doña Isabel Rivera al hacer la adquisición así como al trasmitir en venta tal condominio tendríamos serias dudas si ese hecho de por sí serviría como una suficiente notificación al tercero sobre el carácter de gananciales de tal propiedad.

"Los siguientes artículos 33 y 34 de la Ley Hipotecaria son como sigue:

" '(6717) Artículo 33.—La inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes.'

" '(6718) Artículo 34.—No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo registro.'

"Los tratadistas de derecho hipotecario Sres. Galindo y Escosura al interpretar la parte final del citado artículo 34 de la Ley Hipotecaria se expresan así:

" 'Mas no basta que en los libros conste la causa de la nulidad o de la rescisión;. ha de aparecer claramente, como dice la Ley, correspondiendo apreciar esta circunstancia a los tribunales que resuelvan el litigio." (Comentarios a la Legislación hipotecaria por Galindo y Escosura, tomo 2 pág. 369.)

"El Tribunal Supremo de España en su sentencia de 20 de diciembre de 1904 al considerar una cuestión análoga a la presente sostiene entre otras la siguiente doctrina:

'y porque sería además contradictorio de los principios que informan en Ley Hipotecaria obligar a los terceros a hacer un estudio jurídico acerca de las condiciones de determinados bienes, cuando esta condición se puede y debe hacer constar expresa y terminantemente por la persona a quien interese.' (J.C. 99 pág. 688).

"Nuestra Corte Suprema ha sostenido el propio criterio en varias decisiones de las que citamos las siguientes:

" 'Una persona que adquiere de otra cuyo título está inscrito

en el Registro está protegida, a no ser que exista un claro defecto en el Registro de la Propiedad. El Pueblo vs. Riera, 27 D.P.R. 1'; Sánchez vs. Hartzell, et al. 26 D.P.R. 684.

"'La Corte inferior hace cierta insistencia en cuanto a la diferencia que existe entre las palabras "aparezcan" y "resulten", tal como se usan en el referido artículo. Entendemos que las dos palabras son sinónimas para los fines de esta ley, criterio que está robustecido por el hecho de que en la traducción hecha por el Departamento de la Guerra, la palabra "resultar" ha sido traducida por "appear." '

(*Ayllón* v. *Ojeda,* 28 D.P.R. 67).

"'*Nulidad que no resulta claramente del Registro.*—Tercero.— No constando de la inscripción de la finca de cuya reivindicación se trata que al adquirirla el causante del demandante *estuviera casado,* el hecho de que la inscripción de una hipoteca constituída al año siguiente de la adquisición aparezca que dicho causante era casado, no es un aviso suficiente a los terceros de que lo hubiere estado al tiempo de la adquisición. El actual poseedor y su antecesor compraron la finca de persona que según el registro tenía capacidad y si por no haber sido también demandada la sucesión de la esposa del primer adquirente es nula la compra que de la finca hiciera en subasta pública la persona de quien trae su derecho el actual poseedor, no resultando tal nulidad claramente del registro no puede afectar al actual poseedor, que es un tercero.' (*Menéndez* v. *Cobb,* 28 D.P.R. 775.

"En conclusión es nuestra opinión que la sociedad Luce & Co., S. en C., así como sus causantes con excepción de Amorós Hermanos que tratara directamente con doña Isabel Rivera tienen el carácter de terceros hipotecarios cuyos derechos no pueden ser invalidados en modo alguno a virtud de las nulidades solicitadas en este caso.

"*Res judicata:*—Esta es otra de las excepciones alegadas por los demandados comparecientes, la cual reconoce como base dos pleitos tramitados y resueltos con anterioridad por esta corte, siendo éstos los marcados con los números 3270 y 253.

[1] "En cuanto al primero diremos que a nuestro entender el mismo no sostiene la excepción de causa juzgada (*res judicata*) pues el mismo no fué resuelto en su fondo sino a virtud de una sentencia dictada en razón a que los demandantes no enmendaron su demanda dentro del término que a dicho efecto se les concediera luego de haberse declarado con lugar una excepción previa cuyo fundamento fué el no aparecer de la demanda la liquidación de la so-

ciedad de gananciales tratándose en la acción de reclamar bienes pertenecientes a dicha entidad jurídica.

[2] ''Respecto al segundo pleito la consideramos bien fundada por concurrir entre él y el que nos ocupa las tres identidades de personas, causas y cosas exigidas por el artículo 1217 del Código Civil, y el haber sido resuelto por sentencia en su fondo.

''Los demandantes alegan en contra de tal excepción el hecho de que este pleito se establece bajo una nueva teoría distinta a la que sirviera de base al anterior.

''Nosotros entendemos que no es así, que la teoría es la misma en un caso que en otro y que el único que pudiera favorecer a los demandantes es el hecho de que la doctrina a virtud de la cual fué desestimada la primera acción fué más tarde modificada por la Corte Suprema.

''Pero tal hecho a nuestro juicio en modo alguno puede destruir dicha excepción ya que éste equivaldría a sostener que el hecho de modificarse una doctrina por los tribunales de última instancia produciría el efecto de revivir las acciones ya resueltas al amparo de la jurisprudencia que en aquel entonces regía y estaba admitida como buena, es decir, dar a conceder un efecto retroactivo a las nuevas teorías para aplicarla a casos resueltos en fecha en que la misma aún no existía. La modificación de una ley nunca tiene efectos retroactivos sino se le concede expresamente y aplicando igual criterio a la jurisprudencia veremos que no procede aplicar las nuevas teorías a casos que fueron resueltos con anterioridad a la promulgación de las mismas.

''Aparte que en el orden jurídico esto daría lugar a una gran perturbación ya que resurgirían nuevamente pleitos ya resueltos por sentencias definitivas.

''*Prescripción adquisitiva.*—Fundan tal excepción los demandados comparecientes en que han poseído con justo título, buena fe y públicamente por un espacio de más de veinte años la hacienda 'Esperanza' y por tanto el condominio que se reclama.

''Los demandantes en contra de esta excepción alegan que la única prescripción que podría alegarse por los demandados es la extraordinaria pero no la ordinaria y en su apoyo citan el caso de nuestra Corte Suprema de *Capó* v. *Fernández*, 27 D.P.R. 726, pero entendemos que este caso no es de aplicación al presente pues en aquél se trataba de demandados que no tenían justo título lo cual no ocurre en esta acción en que Luce & Co., S. en C., ostenta un título debidamente inscrito en el Registro.'' (Citando casos.)

''Entendemos que la defensa de prescripción en favor de Luce

& Co., S. en C., está sostenida en este caso por los hechos y la Ley aplicable al mismo.

"La excepción de prescripción extintiva de la acción de nulidad no ha sido sostenida en su alegato por los demandados y no creemos por tanto tomarla en consideración.        -

"En cuanto a las mejoras la prueba resulta tan débil que creemos inútil hacer ninguna clase de consideración respecto a las mismas, pudiendo decir lo propio en cuanto a la nulidad de la escritura de transacción hecha por parte de ciertos herederos de doña Isabel Rivera a favor de la mercantil Hartmann & Co. en favor de cuya nulidad existe absoluta carencia de prueba.

"Por lo expuesto somos de opinión que procede dictar una sentencia en este caso declarando sin lugar la demanda sin especial condena de costas."

[1, 2] Por conveniencia en la consideración trataremos primero el tercer señalamiento de error relativo a *cosa juzgada*. Esta defensa, de estar bien propuesta, es fundamental en cualquier caso. Convenimos con el razonamiento de la corte inferior y no vemos que sea necesario agregar nada al mismo.

[3, 4] El primer señalamiento de error se refiere a la defensa de terceros de acuerdo con la ley hipotecaria. El juez de la corte de distrito hizo constar que cuando Isabel Rivera y Texidor, abuela de los demandantes adquirió una sexta parte de la finca "Esperanza" la escritura que se le dió no contenía ninguna manifestación de ser ella casada, por lo menos nada se hizo constar en el registro acerca de tal estado de matrimonio. Los apelantes llaman fuertemente la atención hacia el hecho de que en el mismo día después del traspaso a Isabel Rivera Texidor ésta aparece como esposa de Juan Vives de la Rosa y se convierte en fiadora de él en una fianza de tutor, o algo parecido. Los apelantes dicen lo siguiente:

"No es lógico pensar que la doncella que iba a contraer matrimonio si pensamos que este acto se celebró después de la adquisición de febrero 3 estuviera en dicho día en sus últimos momentos de soltería preparándose para una boda que debió ser rumbosa ya que su esposo ostentaba el título de noble y así mismo lista para firmar

escrituras de adquisiciones de derechos y a las pocas horas de casada constituía fianzas a favor de su esposo.''

Convenimos con los apelantes en que existió una razonable probabilidad de que en febrero 3 de 1852 Isabel Rivera estaba realmente casada con el abuelo de los demandantes, pero debe recordarse que estamos ahora tratando no de probabilidades sino de una presunción. Una presunción no es un hecho final pero exime a la persona que alega la verdad de la misma de presentar prueba. El peso de la prueba para establecer lo contrario incumbe a la otra parte. Para invocar una presunción el que la sugiere no puede descansar en una probabilidad sino que debe presentar un hecho cierto. Esto es exactamente lo que el artículo 1217 del Código Civil prescribe, a' saber:

"Artículo 1217.—Las presunciones no son admisibles sino cuando el hecho de que han de deducirse esté completamente acreditado.'' (Comp. 1911, p. 766, Sec. 4323.)

Cerca de cuarenta años después de la fecha en que Isabel Rivera aparecía adquiriendo esta propiedad mediante compra de su hermana, Amorós Hermanos compraron la ''Esperanza'' a Isabel Rivera. No vemos, cuando entramos en el campo de las presunciones, que existía ninguna necesidad para que Amorós Hermanos investigaran fuera del registro para cerciorarse si Isabel Rivera era o no casada. Sin embargo, supongamos que semejante deber recayera en Amorós Hermanos. Subsiguientemente hubo varios traspasos de esta propiedad antes de ser adquirida por Luce & Co., los actuales dueños. Convenimos enteramente con la corte inferior en que para Luce & Co. no podía aparecer claramente del registro que la sexta parte de la propiedad ''Esperanza'' que Isabel Rivera adquirió de su hermana no era propiedad privativa de la referida Isabel Rivera, y el caso de *Menéndez* v. *Cobb*, 28 D.P.R. 775, es especialmente aplicable.

Intencionalmente decimos que Luce & Co. no tenía noti-

cia de que la propiedad inscrita a nombre de Isabel Rivera como una propiedad privativa no era en verdad tal propiedad privativa. Existe otra presunción en la ley. Cuando una persona, hombre o mujer, comparece en una escritura adquiriendo una propiedad, a falta de algo que demuestre lo contrario, se presume que dicho adquirente ha quedado convertido en dueño de la dicha propiedad. Esto es fundamental. Por tanto, la obligación recae en la parte contraria de demostrar que no es una propiedad privativa de la parte que la adquiere. Esta obligación puede cumplirse demostrando un estado de matrimonio, pero como hemos indicado, esto debe hacerse con precisión.

Isabel Rivera adquirió una propiedad en el año 1852. Ella la compró a su misma hermana. Cada una de ellas evidentemente era heredera de un caudal considerable. Existe una razonable probabilidad de que Isabel Rivera era dueña de otras propiedades heredadas de sus padres además de la porción de dos sextas partes de la "Esperanza." Somos más bien de parecer de que si existe alguna probabilidad de que Isabel Rivera era casada, hay quizás una probabilidad más fuerte de que la propiedad adquirida por ella en 1852 era su propiedad privativa adquirida con su propio dinero. Si abandonamos el campo de las presunciones para entrar en el de las probabilidades, estaríamos convencidos de que la porción de una sexta parte de la "Esperanza" pertenecía exclusivamente a Isabel Rivera.

Debemos seguir investigando. Creemos que si hubiera existido una presunción en el año 1852 de que la porción de una sexta parte de la "Esperanza" era propiedad ganancial, se logró destruir la presunción. Por más de cincuenta años esta sexta parte fué tenida como propiedad privativa de Isabel Rivera por todo el mundo. La historia de la finca "Esperanza" según consta de las .varias inscripciones en el registro indica que una mitad de la "Esperanza" aparecía pertenecer a Juan Vives en concepto de bienes gananciales y la otra mitad, o sea, dos sextas partes de una sexta parte,

constaba que pertenecía a Isabel Rivera. Repetidas veces
el hecho de que Isabel Rivera era la dueña de una mitad de
la finca "Esperanza" fué reconocido por todas las personas
que tuvieron que ver con ella, su esposo, algunos de sus
hijos, varios acreedores hipotecarios y cesionarios. Después
de tal lapso de tiempo los apelantes no pueden descansar
en una probabilidad para invocar una presunción, lo con-
trario de lo cual ha sido reconocido tan constantemente.

La prescripción extraordinaria no fué alegada en este
caso. Sin embargo, la primitiva vendedora fué Isabel Ri-
vera quien estuvo en reconocida posesión en el año 1854 y
vendió en 1892. Luce & Co. adquirió en 1920. Ellos tie-
nen derecho por lo menos a lo que se infiere de los artícu-
los 33 y 34 de la Ley Hipotecaria (Comp. 1911, p. 1121,
secs. 6717 y 6718) y pueden afirmar que la naturaleza ga-
nancial de esta porción de una sexta parte no constaba cla-
ramente del registro. No hemos podido entender entera-
mente las alegaciones del apelante de que Isabel Rivera
vendió esta propiedad en el año 1892 inmediatamente des-
pués de la muerte de su esposo y antes de que los bienes
gananciales hubieran sido liquidados. En vista de las ante-
riores consideraciones la cuestión es de poca importancia.
Es evidente, sin embargo, que Isabel Rivera hubiera tenido
derecho a una mitad de dicha porción de una sexta parte
de la "Esperanza" y podía traspasarla inmediatamente.
En ningún momento resolvió este tribunal que un heredero
o esposo superviviente no podría traspasar la participación
que le pertenece inmediatamente después del fallecimiento
del marido o causante. Lo más que se resolvió en nuestras
anteriores decisiones fué que para reivindicar la parte re-
clamada debe precisarse mediante una liquidación, partición
o algo semejante. Desde las decisiones en el caso de *Capó*
v. *Fernández et seq.,* es aún más claro que un heredero o
esposo superviviente puede traspasar su participación en
una propiedad sin tal liquidación o partición.

[5] No estamos conformes con la corte inferior en cuanto

al segundo señalamiento de error, o la prescripción ordinaria de diez años. Si los apelantes hubieran tenido razón al decir que el carácter ganancial de esta finca constaba en el registro, entonces los demandados no tendrían un justo título. Cuando del registro consta claramente un hecho la persona que adquiere no puede obtener un justo título. Este es uno de los fines mismos de un sistema de registro. Al revocar el caso de *Ayllón* v. *Ojeda,* 28 D.P.R. 67, la Corte de Circuito de Apelaciones entendió que los defectos de la falta de fianza, juramento e inscripción constaba del registro. Esta corte y la Corte Suprema de los Estados Unidos fundaron la teoría de un justo título en el hecho de que estos defectos no constaban de tal modo. Si constaban, no podía surgir justo título.

*Con esta excepción convenimos con el razonamiento de la Corte inferior y debe confirmarse la sentencia.*