ANA, SARAH, LIBRADA Y PALMIRA CLAVELL Y RODRÍGUEZ, demandantes y apelantes, *v.* ULISES CLAVELL Y RÍOS Y JAIME, JUSTINO, JUAN, ANTONIO y ULISES CLAVELL Y RODRÍGUEZ, demandados y apelados.

No. 4834.—*Sometido:* Diciembre 10, 1929. *Resuelto:* Junio 23, 1930.

*Guillermo S. Pierluissi, F. Zapater* y *R. A. Atiles,* abogados de los apelantes; *Leopoldo Tormes,* abogado del apelado J. Clavell; *José & A. S. Poventud,* abogados de los apelados restantes.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Don Jaime Facundo Clavell y Ríos falleció en Ponce el 25 de marzo de 1915. El 10 de julio del propio año fueron declarados herederos suyos por la corte del distrito sus nueve hijos Ana, Sarah, Librada, Palmira, Jaime, Justino, Juan, Antonio y Ulises Clavell y Rodríguez. El 20 de enero

de 1928, Ana, Sarah, Librada y Palmira, iniciaron este pleito contra Ulises Clavell y Ríos, en reivindicación de una porción de terreno de cinco y media cuerdas, que valoran en $5,500, y cobro de $3,630 por frutos percibidos, deduciendo de ellos $600 que el causante de las demandantes debía al demandado. Habiendo rehusado los otros cinco herederos de Don Jaime Facundo Clavell y Ríos asociarse a las demandantes, fueron hechos partes demandadas.

Se alega en la demanda, en resumen, que Don Jaime Facundo era dueño de una finca de treinta cuerdas que vendió con pacto de retro a Doña Matilde Muñoz Pizarro; que no contando con los $600 que necesitaba para retraerla, los pidió prestados a su hermano, el demandado Don Ulises; que Don Ulises accedió y a fin de que pudiera reembolsarse del dinero prestado, Don Jaime Facundo convino en segregar de la finca de treinta cuerdas la porción de cinco y media que en la demanda se reclama, y entregársela para que con sus frutos se pagara él mismo su crédito, y que en vez de ello, al prepararse la escritura de retroventa de las treinta cuerdas, otorgada por la señora Muñoz a favor de Don Jaime Facundo, ordenó la preparación de otra de venta de las cinco y media cuerdas, otorgada por Don Jaime Facundo, a favor de Don Ulises, que se firmó en la forma que luego se indicará.

Los demandados contestaron alegando, en resumen, que el demandado Ulises Clavell y Ríos posee y es dueño de las cinco y media cuerdas de terreno en cuestión, por haberlas adquirido por compra a Don Jaime Facundo Clavell y Ríos el 6 de septiembre de 1905, por escritura pública otorgada ante el Notario Don Rosendo Matienzo y Cintrón, inscrita en el registro desde el 26 de diciembre del propio año de 1905. Alegaron, además, los demandados: 1, que la demanda no aducía hechos suficientes para determinar una causa de acción; 2, que les favorecía la prescripción de cuatro años; 3, la de diez; 4, la de la reclamación de frutos y productos; 5, el *estoppel* por parte del causante de los demandantes;

6, la ratificación de la venta por dicho causante; y, 7, el *estoppel* por parte de las propias demandantes.

Fué el pleito a juicio. Practicóse una larga prueba, y la corte finalmente dictó sentencia declarando la demanda sin lugar, con costas, expresando en su relación del caso y opinión, lo que sigue:

"La corte considera probado, sin tener duda de ello y por el crédito que le merece la prueba de los demandados, que al acto del otorgamiento de la escritura No. 263 ante el notario Rosendo Matienzo Cintrón, comparecieron las partes contratantes Jaime Facundo Clavell y Ríos y Ulises Clavell y Ríos y que el contenido de dicha escritura, o sea la venta de las cinco y media cuerdas de terreno, es cierto, habiendo sido ratificado posteriormente por otros actos del vendedor Jaime Facundo Clavell y Ríos."

No conformes las demandantes, interpusieron el presente recurso de apelación, señalando en su alegato la comisión de nueve errores, que argumentan extensamente. El alegato de la parte apelada es también extenso, y contesta todas las cuestiones suscitadas por las apelantes.

Es tan fuerte la impresión que se va formando en favor de la parte demandada, a medida que se avanza en el examen de los autos, que al final no queda duda de ningún género de que la única resolución que cabe dictar es la confirmación de la sentencia apelada. La dificultad está en escoger la razón en que deba la confirmación fundarse, porque hay tantas, que exponerlas todas alargaría de un modo indebido nuestra opinión.

Todo gira aquí alrededor de cierto error cometido al firmarse la escritura de venta.

Dicha escritura termina así:

"Bajo las precedentes cláusulas dejan formalizada esta escritura, que los otorgantes se obligan a guardar y cumplir en legal forma. Leídales íntegramente a presencia de los testigos vecinos de esta ciudad y por mi conocidos, don Francisco Alvarez Tizol y don Raúl Mattei, por haber renunciado a hacerlo por sí, de cuyo derecho fueron advertidos, queda aprobada y ratificada por los comparecientes de los que sólo firma el comprador y no el vendedor porque aunque

sabe hacerlo se lo impide la carencia de vista, pero por su mandato lo hace su hijo presente don Jaime Clavell y Rodríguez, en unión de los instrumentales y de todo yo el Notario doy fe.—Jaime Clavell y Rodríguez.—Ulises Clavell.—Franco. Álvarez Tizol.—Raúl Mattei.—Signado: Lcdo. Rosendo Matienzo Cintrón.—Rubricado.—Hay un sello de rentas internas del valor de un dóllar, inutilizado.''

La ley notarial dice:

''Sección 14.—Si los otorgantes o alguno de ellos no supiere o no pudiere firmar, lo expresará así el Notario, debiendo firmar uno de los testigos, escribiendo de su puño, en ante firma, que lo hace por sí como testigo, y a nombre del otorgante, que no sepa o no pueda verificarlo.''

Y como el hijo que firmó por el padre no figura como testigo, ni podía serlo, se sostiene que el documento es nulo. Este fué el hallazgo que sirvió para fabricar el pleito. Sin embargo, la fuerza de la verdad es tal que generalmente se impone por sí misma, siendo la tendencia firme de la ley y la jurisprudencia, reconocerla, abrirle el camino para que se manifieste y triunfe y quede establecida. Por eso estimamos que el juez sentenciador actuó con razón derecha y aplicó bien la ley y la jurisprudencia al decidir el caso en la forma en que lo decidió, y al expresarse en su indicada relación del caso y opinión, así:

''Tienen razón las demandantes de que dicha escritura debe considerarse nula, de acuerdo con la Ley Notarial y la jurisprudencia sentada en los casos de Banco *Territorial* v. *El Registrador*, 22 D.P.R. 584; *Rosa* v. *Registrador de San Juan*, 28 D.P.R. 713; *Berríos* v. *Registrador*, 25 D.P.R. 718; *Villanueva* v. *Registrador*, 18 D.P.R. 831 y *Rodríguez* v. *Registrador*, 14 D.P.R. 738. Pero dicha nulidad sólo afecta a su inscripción en el Registro de la Propiedad, y, por tanto, no perjudica a terceros pero el hecho de que la escritura y su inscripción sean nulos, no significa que el contrato de compraventa lo sea, entre las partes, y sus causahabientes, y es eso lo que expresamente resolvemos, que el contrato existió, la transacción se llevó a efecto, fué ratificada por todos, pues los mismos demandantes cedieron sus derechos y acciones sobre las veinticuatro y media cuerdas, admitiendo así desde 1915, siendo ellos mayores de edad, que las cinco y media cuerdas habían dejado de pertenecer a su padre, y

por lo tanto, que en cuanto a las partes, el contrato fué y es válido. Nuestra Corte Suprema en el caso de *Rosa* v. *Registrador de San Juan.* 28 D.P.R., 712 resolvió que:

" 'La firma de *ambas partes* en la escritura de 1880 y la del vendedor en la de 1905, no constan en la forma exigida por la ley, y. en tal virtud no pueden dichas escrituras recibirse en el registro como documentos públicos. *Esto no quiere decir, desde luego, que los actos a que dichas escrituras se refieren sean, por el defecto apuntado, nulos. Si en realidad de verdad las transacciones se llevaron a efecto, válidas serán en cuanto a las partes que en ellas intervinieron.*'

"El artículo 1221 del Código Civil Revisado dice que el contrato existe desde que una o varias personas consienten en obligarse, respecto de otra u otras, a dar alguna cosa o prestar algún servicio, y el 1225 dice que:

" 'Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley.'

"En el caso de *Vázquez* v. *Medina,* 17 D.P.R. 105, nuestro Tribunal Supremo resolvió que:

" 'De acuerdo con los artículos 1221 y 1225 del Código Civil Revisado, queda perfeccionado un contrato de compraventa de finca rústica desde el momento en que las partes contratantes convienen en la venta de determinado terreno por precio cierto, sin que sea requisito esencial para la existencia de dicho contrato el que conste en documento público, pudiendo las partes compelerse recíprocamente a que se haga constar en documento público.'

"Y véase, en apoyo de esta doctrina, la sentencia del Tribunal Supremo de España de 18 de junio de 1902.

"Nuestra Corte Suprema, en el caso de *Fragoso* v. *Marxuach,* 31 D.P.R. 195, resolvió que siendo nula una escritura como documento público y nula necesariamente su inscripción en el Registro, no obstante el contrato queda reducido a un documento privado que no perjudica a tercero, y asimismo, en el de *Aponte* v. *Ramírez,* 17 D.P.R. 624, donde se resolvió que:

" 'Desde el momento en que un contrato de venta de finca rústica queda perfeccionado por el consentimiento de las partes, unido a la posesión de la finca vendida, dicho contrato surte efectos legales entre las partes, herederos y causahabientes, sin que influya en nada en la eficacia del contrato, el no haberse otorgado documento público ni privado de dicha venta.'

"Vistos, por último, el artículo 1245 del Código Civil y los casos de *Picart* v. *León,* 22 D.P.R. 593 y *Ayllón* v. *González,* 28 D.P.R. 67, resolvemos que el contrato de compraventa, aun cuando sea nula la escritura en que se otorgó, existió y es obligatorio entre las partes y sus causahabientes."

Pero hay más, y éste será el solo otro motivo que expondremos para confirmar la sentencia. Es tan fundamental, que sería bastante para desestimar la demanda.

Fueron las propias demandantes las que en el acto del juicio introdujeron como prueba la escritura de venta de las cinco cuerdas y media que termina en la forma que conocemos. Pues bien, la escritura de retroventa, otorgada el mismo día que la otra y por virtud de la cual readquirió el causante de las demandantes la finca de la que se segregó la porción de cinco cuerdas y media, termina de idéntico modo, así:

"Leídales íntegramente a presencia de los testigos vecinos y por mi conocidos que lo son Don Rodulfo E. Monserrat y Don Francisco Renta, por haber renunciado a leerla por sí de cuyo derecho fueron advertidos, queda aprobada y ratificada por los comparecientes que la firman con excepción del señor Clavell que aunque sabe hacerlo se lo impide la carencia de vista; pero por su mandato lo hace su hijo presente Don Jaime Clavell y Rodríguez en unión de los testigos, ante mi el Notario que de todo lo consignado en la presente, doy fe. Enmendado: "segunda". Vale con aprobación de partes y testigos, vuelvo a dar fe.—Matilde Muñoz.—Ramón Albizu y Vázquez.—Jaime Clavell Rodríguez.—Rodulfo E. Monserrat.—Francisco Renta.—Signado, rubricado, firmado y sellado, Lcdo. Rosendo Matienzo Cintrón."

Si el demandado, Don Ulises, no pudo adquirir a virtud de la escritura de 1905, tampoco pudo adquirir el causante de las demandantes, porque su escritura se otorgó en las mismas condiciones, y por ello tuvo razón también la corte de distrito al consignar en su repetida relación del caso y opinión, lo que sigue:

"Resolvemos, además, que los demandantes no han probado tener un título superior al de los demandados, como se requiere en toda

acción reivindicatoria, y, por el contrario, ellos derivaron su título de uno que adolece del mismo defecto del de los demandados, o sea la escritura No. 262 de 6 de septiembre de 1905, en que también aparece firmando Jaime Clavell Rodríguez por su padre Jaime Facundo Clavell y Ríos. *In pari delicto potior est conditio defendentis.*—Véase *Santos* v. *López,* 26 D.P.R. 417.''

*Debe confirmarse la sentencia recurrida.*