Rafael Saurí, demandante y apelado, *v.* María Echevarría Viuda de Subirá, Concepción Subirá y su esposo Manuel A. Frau, y Providencia Subirá y su esposo Salvador Perelló, demandados y apelantes.

Núm. 6915.—*Sometido:* Diciembre 3, 1936. *Resuelto:* Marzo 5, 1937.

*Henry G. Molina* y *Gustavo Rodríguez,* abogados de los apelantes; *Leopoldo Tormes García,* abogado del apelado.

El Juez Asociado Señor Córdova Dávila emitió la opinión del tribunal.

En 9 de enero de 1929 el demandante apelado radicó ante la Corte de Distrito de Ponce una demanda de deslinde, reivindicación y negatoria de servidumbre, alegando seis causas de acción. En la vista del caso el demandante solicitó permiso para radicar una demanda enmendada que acompañó con la moción. Para evitar la suspensión de la vista, la corte se negó a admitir la aludida demanda enmendada, pero hizo constar que admitiría que luego se enmendara la demanda original para ajustarla a la prueba.

Por estipulación de las partes la corte practicó una inspección ocular sobre el terreno antes de presentarse evidencia alguna. Practicada la prueba del demandante apelado, los demandados apelantes solicitaron que se declarase sin lugar la primera causa de acción de la demanda por no haberse presentado evidencia para sostenerla, y habiéndose allanado el demandante, la corte declaró con lugar dicha moción. Luego se enmendó la demanda original para ajustarla a la prueba. En esta demanda enmendada se alega como segunda causa de acción que las fincas Santa Cruz, de la propiedad del demandante, e Isabela, de la propiedad de los demandados, lindan entre sí; que la pieza de caña Salichs, perteneciente a la finca Isabela, linda por el oeste con un camino privado perteneciente a la finca Santa Cruz, del demandante, y que la colindancia la marca el borde o arista

este de una zanja que separa ambas fincas por esa parte. Como tercera causa de acción se alega que la aludida pieza Salichs y la pieza Trapiche de Bueyes, pertenecientes a la finca Isabel, están separadas por el sur, de los terrenos de la finca Santa Cruz, por una zanja que corre de este a oeste y que la colindancia por esa parte es el borde o arista norte de dicha zanja. Como cuarta causa de acción se álega que la pieza de caña Pan de Azúcar, perteneciente a la aludida finca Isabela, de los demandados, está separada de los terrenos de la finca Santa Cruz, del demandante, por el oeste, por una zanja que corre en dirección norte a sur, y que la colindancia por esa parte es el borde o arista este de dicha zanja. Como quinta causa de acción se alega que el camino municipal de Bucaná, al llegar a un punto esquina de la hacienda Santa Cruz del demandante, dobla a la derecha con dirección suroeste y atraviesa el río Bucaná por un puente de madera y luego termina en el mar, y que los demandados, confundiendo maliciosamente dicho camino vecinal con un camino privado perteneciente a la finca Santa Cruz y alegando que éste es una continuación o parte de aquél, están usando y poseyendo el referido camino de la finca Santa Cruz para uso de la finca Isabela y que pretenden seguir usándolo como una servidumbre de paso.

Los demandados apelantes contestaron la demanda, admitiendo algunos hechos y negando otros, alegando materia nueva de oposición a la demanda y aduciendo como defensa adicional que ellos y sus antecesores se encuentran y se han encontrado en posesión de las parcelas de terreno descritas en relación con la segunda, tercera y cuarta causas de acción, con justo título y buena fe, y en concepto de dueños, por más de treinta años no interrumpidos, por lo que dichas parcelas son hoy de su propiedad en virtud de prescripción adquisitiva de acuerdo con los artículos 1858 y 1860 del Código Civil.

Sometido el caso a la corte inferior, dicha corte declaró con lugar la demanda en cuanto a la segunda, tercera, cuarta y quinta causas de acción. La sexta causa de acción fué de-

clarada sin lugar por no haberse presentado evidencia en cuanto a ella durante la vista. No conforme con la sentencia, los demandados han apelado para ante este tribunal, alegando en primer término que la Corte de Distrito de Ponce cometió error al apreciar la evidencia en el sentido de que la colindancia en controversia entre las haciendas Isabela y Santa Cruz es el borde este, norte y este, respectivamente, de las zanjas que transcurren por la colindancia oeste y sur de la pieza Salichs, sur de la pieza Trapiche de Bueyes y oeste de la pieza Pan de Azúcar, en vez de ser el borde oeste, sur y oeste respectivamente de dichas zanjas.

El error apuntado cubre la segunda, tercera y cuarta causas de acción. Examinemos la prueba por ambas partes aportada en apoyo de las referidas alegaciones:

Julio Torres Troche declaró que fué mayordomo en la hacienda Santa Cruz alrededor de siete años (de 1905 a 1911), y en la hacienda Isabela alrededor de dos años (de 1912 a 1913); que la pieza de caña Salichs, perteneciente a la Hacienda Isabela, lindaba, cuando él estaba allí, por el oeste con un camino llamado "La Gran Calle de Santa Cruz", perteneciente a la hacienda del mismo nombre; que entre dicho camino y la hacienda Isabela había una zanja que corría en dirección norte a sur; que a lo largo del borde este de dicha zanja había una cerca; que hoy sólo quedan de dicha cerca los árboles que eran los antiguos espeques vivos; que esa zanja era utilizada por la hacienda Santa Cruz para desagüe y era limpiada por los dueños de Santa Cruz. También declaró que la aludida pieza Salichs estaba separada por el sur, de la hacienda Santa Cruz, por una zanja de desagüe que corría de este a oeste; que sobre el borde norte de dicha zanja había una cerca. Finalmente declaró que al oeste de la pieza Pan de Azúcar, perteneciente a la Hacienda Isabela, y separándola de la hacienda Santa Cruz, había una zanja en dirección de norte a sur y que había una cerca en pedazos sobre el borde este de dicha zanja.

Julio Ribas Salguero declaró que su padre fué subarrendatario de la Hacienda Isabela por los años de 1906 a 1910; que dicho testigo atendía personalmente el cultivo de dicha hacienda; que su padre le indicó las colindancias de dicha finca; que su padre había aprendido dichas colindancias de un representante de la sucesión Oppenheimer; que la pieza Salichs lindaba por el oeste con un camino vecinal considerado de la Hacienda Santa Cruz; que al borde o arista este de una zanja que dividía dicha pieza del camino, había una cerca de espeques vivos y alambres. También declaró que la pieza Salichs estaba separada por el sur de los terrenos de la Hacienda Santa Cruz por una zanja; que a lo largo del borde norte de la zanja había una cerca, en parte destruída, en parte buena. Finalmente declaró que por el lado oeste de la pieza Pan de Azúcar también había una cerca que la separaba de la finca Santa Cruz; que aquí también había en parte, por el borde este de dicha zanja, espeques y pedazos de cerca; que estas zanjas eran utilizadas por la hacienda Isabela para desagüe.

Modesto Quiñones Feliciano declaró que su hermano Víctor tuvo arrendada la hacienda Santa Cruz y que él la administró después del año 1894; que luego fué inspector de caminos del municipio de Ponce desde el año 1924 hasta el año 1928; que entre la hacienda Santa Cruz y la Isabela había por esa parte una zanja en dirección norte a sur a lo largo del camino de Bucaná, que entonces dobla hacia el este por el sur de las piezas Salichs y Trapiche de Bueyes y después dobla la Pan de Azúcar hacia el sur; que el lindero visible era una "palizada" de alambre con espeques vivos de árboles de zarcillo, guásima, higüera y almácigo, que quedaba al este, norte y este respectivamente de dicha zanja.

Ramón María Roig declaró que es ingeniero y fué encargado por el apelado Sr. Saurí para hacer un levantamiento de detalles de las colindancias entre las haciendas Isabela y Santa Cruz y declaró ampliamente explicando dicho plano,

el que fué admitido en evidencia y marcado *exhibit* 3 del demandante.

Antonio Leandri (prueba de *rebuttal*) manifestó que era mayordomo de la hacienda Santa Cruz en la fecha del litigio; que había trabajado antes con don Oscar Oppenheimer en la hacienda Santa Cruz, primero como peón y después como mayordomo; que conoce las colindancias por las cercas de alambre con palos prendidos y palos secos que hay allí; que a lo largo de la colindancia oeste de la pieza Salichs hay una cerca que tiene palos de jobo, palos de guásimas, palos de higüera y de zarcillo, por el borde norte de la zanja que separa dichas piezas de la hacienda Santa Cruz; que luego esa zanja dobla hacia el este por el sur de las dos piezas mencionadas hasta la pieza Pan de Azúcar y de ahí endereza de norte a sur y va hacia el mar; que la hierba de la zanja la cortaban los peones de Santa Cruz.

Hasta aquí la prueba del demandante. Pasemos a examinar la que aportaran los demandados sobre los particulares cubiertos por el primer error.

Oscar Oppenheimer declaró que vendió la hacienda Santa Cruz al demandante Sr. Saurí; que conoce las colindancias de dicha hacienda desde que tiene uso de razón; que le indicó a Saurí que la colindancia entre ambas fincas es el borde o arista oeste, sur, oeste de la zanja que las separa; que a lo largo del borde oeste, sur, oeste de la zanja había una cerca que ha sido cambiada por el demandante Saurí por conveniencia; que al borde este, norte, este, hay unos palos viejos de zarcillo y guásimas, con unos alámbres donde se ve que existía una cerca, pero ésa no era la colindancia; que la limpieza de la zanja la hacía la hacienda Isabela y no la Santa Cruz; que antes de vender a Saurí no tuvo divergencias de clase alguna con los dueños de la Isabela en cuanto a las colindancias entre ambas fincas.

J. Otilio Milán declaró que fué administrador de la hacienda Isabela de 1912 a 1919 y entre la pieza Salichs y el

camino había una zanja; que la limpieza de la misma era hecha por la hacienda Isabela y nunca por la hacienda Santa Cruz; que se usaba la zanja para desagüe de la pieza Salichs y de la pieza que le quedaba arriba; que la zanja al sur de la pieza Salichs corría en dirección este y luego doblaba hacia el sur; que esta zanja que corre hacia el sur era dedicada al desagüe y limpiada generalmente por la hacienda Isabela; que al entregarse la hacienda Isabela a los apelantes, se incluyeron las zanjas y las cercas.

Hipólito Vázquez declaró que trabaja con la sucesión Subirá, atiende al riego y zanjas; que entre el camino Bucaná y la hacienda Isabela hay una zanja y que él la ha limpiado personalmente; que nunca ha trabajado en esa zanja por cuenta de la hacienda Santa Cruz; que la hacienda Isabela linda por el sur de la pieza Salichs con terrenos de la hacienda Santa Cruz y una zanja las separa; que ha trabajado en esa zanja por cuenta de la hacienda Isabela; que dicha zanja, después de seguir al este, dobla hacia el sur a lo largo del margen oeste de la pieza Pan de Azúcar; que en esta zanja al oeste de Pan de Azúcar ha trabajado por cuenta de la hacienda Isabela; que al borde este de la zanja al oeste de la pieza Salichs, había una empalizada con espeques de mangle, etc.; que al borde norte de la zanja al sur de la pieza Salichs había también una cerca; que en la zanja al oeste de Pan de Azúcar la cerca estaba al este y no al oeste de la zanja.

Después de un estudio detenido de estos testimonios y de los planos y fotografías presentados en evidencia por ambas partes, la corte inferior llegó a la conclusión de que los árboles en línea a lo largo del borde o arista este, norte, este, de las respectivas zanjas que separan las referidas fincas de que hablan testigos de ambas partes y que el juez vió en la inspección ocular que hizo sobre el terreno, son los espeques vivos, con puntos de alambre, de la cerca de colindancia entre ambas haciendas. Cita la corte inferior el caso de *Isales v. Maeso,* 16 D.P.R. 791, donde se resolvió que al determinar

y fijar los linderos de una finca, las líneas divisorias que resultan indicadas por objetos naturales deben aceptarse con preferencia a las que puedan resultar de cálculos matemáticos, y si existe como lindero natural de las fincas una línea de árboles que por mucho tiempo ha sido considerada como la verdadera colindancia, y la preponderancia de la prueba se pronuncia en ese sentido, la corte inferior no comete error al designarla como lindero entre las dos fincas.

La corte inferior también declaró probados todos los hechos alegados en la quinta causa de acción de la demanda. Examinaremos ahora la prueba por ambas partes aportada sobre este particular.

J. Torres Troche declaró que el camino de Bucaná principiaba por la quinta del Lic. Salichs y al llegar al portón que está ahí colocado en la "Gran Calle de la Hacienda Santa Cruz" (este camino fué observado por el juez de la corte inferior en la inspección ocular), doblaba a la derecha y seguía al río Bucaná hasta la central Constancia y luego llegaba al mar; que en 1905 había otro portón en la Gran Calle de la Hacienda Santa Cruz, un poco más arriba del que está hoy, y tenía un rótulo que decía "Prohibido el Paso"; que nunca oyó decir que la Gran Calle fuera un camino vecinal, y que él tenía órdenes de no dejar pasar a nadie por allí, sin permiso de don Oscar Oppenheimer.

Julio Ribas Salguero declaró que el camino de Bucaná llega hasta el portón principal de la hacienda Santa Cruz; que ese portón a él le parece que hoy no existe; que el camino después se desviaba hacia el oeste, donde hay una línea de ferrocarril (esta línea de ferrocarril fué observada por el juez en la inspección ocular); que lo que se llama la Gran Calle de Santa Cruz no era un camino vecinal.

Modesto Quiñones Feliciano declaró que cuando fué inspector de caminos municipales tuvo que reparar el camino de Bucaná; que el camino llega hasta el portón de la hacienda Santa Cruz; que al llegar a ese portón el camino dobla a la derecha donde está una vía de ferrocarril y de ahí sigue

hasta la playa; que antes de llegar a la playa hay un puente de madera en dicho camino al cruzar el río; que desde donde el camino de Bucaná dobla para la derecha lo que sigue para el sur es la Gran Calle que llamaban de la hacienda Santa Cruz.

Ramón María Roig declaró que es ingeniero y que fué encargado por el apelado Sr. Saurí para hacer un levantamiento de detalles de las colindancias entre ambas haciendas. Con el plano a la vista declaró que para determinar los puntos hizo uso de las descripciones tomadas del registro de la propiedad y de unas escrituras que le suplió el abogado de dicho apelado; que hizo constar en el mapa el camino que separa la pieza Salichs de la hacienda Santa Cruz como perteneciente a esta última porque de los documentos que le suministraron no constaba que la hacienda Santa Cruz colinde por el este con un camino vecinal.

Pedro Clausells declaró que es agrimensor y levantó un plano de la hacienda Santa Cruz hace más de veinte años, cuando esta finca pertenecía a doña Ana Salomón viuda de Oppenheimer; que para levantar dicho plano se valió del encargado de la hacienda, quien le iba marcando los linderos de la finca. El plano fué admitido y marcado como *exhibit* número 4 del demandante.

Don Guillermo Vivas Valdivieso (prueba de *rebuttal*) declaró que el camino Bucaná nace en la finca del Lic. Salichs, hace ángulo, camina hasta confundirse con el Callejón que vira hacia el río Bucaná; que el camino que pasa por la hacienda Isabela no pasa por la hacienda Santa Cruz. Luego, contestando a repreguntas con el plano de caminos municipales a la vista, declaró que el camino marcado como núm. 8 en el plano es el camino de Bucaná y que cruza la finca de Oppenheimer llamada Santa Cruz.

Antonio Leandri declaró que conoce el camino de Bucaná; que ese camino parte de casa de Pepito Salichs, llega a la entrada de Santa Cruz y dobla hacia el oeste para seguir hasta la playa de Ponce; que respecto al camino a la entrada

de la hacienda Santa Cruz recibió órdenes de don Oscar Oppenheimer de no dejar pasar por allí a nadie; que siendo él peón fué a pasar y el mismo don Oscar lo hizo virar; que después, siendo mayordomo, existía un portón donde existe hoy un portón de hierro, a la entrada del camino; que este portón tenía candado y él guardaba la llave; que para pasar por allí había que pedir permiso.

Esta es la prueba del demandante en apoyo de la quinta causa de acción. Veamos lo que dijeron los testigos de la parte demandada:

Roberto Arroyo Vivas declaró que es Director Municipal de Obras Públicas de Ponce y como tal tiene bajo su custodia el plano oficial de los caminos municipales de Ponce. Después de identificada por el testigo una copia azul de dicho plano oficial, fué admitida en evidencia y marcada como *exhibit* A de los demandados. Con el plano a la vista el testigo declaró que el camino Bucaná es el que está marcado número 8, con una línea de puntos, es decir, como camino en proyecto.

Oscar Oppenheimer declaró que el camino de Bucaná empieza desde la quinta de Salichs y llega hasta donde tenía el Sr. Subirá una romana y ahí dobla a la derecha (el juez de la corte inferior observó en la inspección ocular que la romana de pesar caña queda en el mismo camino por donde pasa la vía de ferrocarril); que en ese punto en que doblaba, había otro camino que va a la hacienda Santa Cruz; que este camino era vecinal y a través del mismo no existía portón alguno hasta que el Sr. Saurí compró la hacienda y puso uno allí; que hasta la fecha en que entregó la hacienda Santa Cruz al apelado, conoció siempre ese camino al sur del portón como un camino vecinal y no como la Gran Calle de Santa Cruz; que él no le prohibía el paso a la gente por allí.

Otilio Milán declaró que la hacienda Isabela linda con el camino Bucaná, el cual corría de norte a sur; que después atraviesa la hacienda Santa Cruz y sigue hacia el mar; que todo el mundo usaba el camino al oeste de la pieza Salichs;

que la hacienda Isabela lo usaba para pasar caña y para pasar sus empleados; que nunca vió en el camino un portón con un rótulo prohibiendo el paso.

Juan Elías Cordero declaró que es ingeniero civil; que en el año 1907 levantó un plano de la hacienda Isabela a instancias de don Santiago Oppenheimer (el plano fué admitido en evidencia y marcado como *exhibit* E). Con el plano a la vista declaró que el camino marcado en el plano "Camino Vecinal" es el marcado al oeste de la pieza núm. 10; que ese camino vecinal viene de norte a sur; que lo denominó "Camino Vecinal" porque así se lo indicó el peón que le señaló las colindancias; que no recuerda haber visto un portón en ese camino ni recuerda dónde empieza.

Blas C. Silva declaró que actuó como ingeniero municipal de Ponce desde 1904 hasta 1910; reconoce su firma en uno de dos planos de los caminos municipales de Ponce que le fueron mostrados y lo identifica como una copia en tela del original preparado en 1920 (el plano fué admitido en evidencia y marcado como *exhibit* G); con el plano a la vista el testigo declaró que el camino Bucaná está señalado en el plano con el núm. 8; que está señalado en el plano como un camino en proyecto; que el camino tiene dos ramales y en uno de esos dos ramales hay una vía de ferrocarril.

Aunque la corte inferior estimó que la prueba testifical respecto al camino de Bucaná es contradictoria, resolvió el conflicto a favor del demandante, basándose principalmente en la evidencia documental por ambas partes aportada.

En su relación del caso y opinión la corte inferior hizo el siguiente análisis de dicha prueba documental:

"Tenemos a la vista el 'Plano General de la hacienda Isabela' levantado en abril de 1907 por el ingeniero señor J. Elías Cordero (*exhibit* E de los demandados).

"En este plano aparece delineado un camino que va en dirección de norte a sur y marcado así: 'Camino vecinal'.

"Tenemos a la vista el 'Plano General de las haciendas Isabela, Aguas Prietas y Consuelo Vallas', levantado por el agrimensor señor Francisco Valls, en julio de 1901, (*exhibit* núm 1 del demandante).

"En este plano aparecen dos caminos que forman un ángulo agudo. El lado del ángulo que está en dirección de este a oeste está marcado en el plano así: 'Camino vecinal'. Y el otro lado de dicho ángulo, que va de norte a sur, está marcado en el plano así: 'Camino de Santa Cruz'.

"Tenemos también a la vista el 'Plano General de la Colonia Santa Cruz', levantado en diciembre de 1910 por el ingeniero Sr. Pedro Clausells (*exhibit* núm. 4 del demandante).

"En dicho plano, como en el anterior, aparece marcado un camino, que va en dirección de este a oeste, con estas palabras: 'Camino vecinal'. Y otro camino, que forma un ángulo con el anterior y que va en dirección de norte a sur, con estas palabras: 'Camino de la propiedad'.

"Tenemos también a la vista el 'Plano de Levantamiento de Detalles', hecho por el ingeniero señor Ramón M. Roig, con fecha 5 de marzo de 1931 (*exhibit* núm. 3 del demandante). En dicho plano aparece delineado un camino que va de norte a sur y después dobla en dirección de este a oeste, marcado así: 'Camino municipal de Bucaná'. Y aparece otro camino que va en dirección de norte a sur, marcado de este modo: 'Gran Calle de la Hacienda Santa Cruz'.

"También tenemos a la vista dos planos con el título de 'Plan General del Trazado de los caminos municipales de Ponce'. (*Exhibits* A y G de los demandados.) El *exhibit* A está firmado por J. E. Colón y el *exhibit* G por Blas C. Silva, ambos Directores de Obras Públicas que fueron del Municipio de Ponce.

"En ambos planos aparece el camino de 'Bucaná', marcado con el número 8, como un camino a construir, o sea, en proyecto. El ingeniero señor Blas C. Silva, en su declaración que dejamos consignada más arriba, hizo constar 'que se trata de un camino en proyecto'.

"Ese plan de caminos fué aprobado por el Departamento del Interior. (*Exhibit* D de los demandados.)

"Según aparece de la certificación del Comisionado del Interior (*exhibit* D), dicho camino de Bucaná, que lleva el número 8, fué inscrito en febrero 14 de 1908.

"Y la inscripción de ese camino fué hecha en virtud de un acuerdo tomado por el Consejo Municipal de Ponce en sesión celebrada en 17 de enero de 1908. (*Exhibit* C de los demandados.)

"La evidencia testifical sobre el camino de 'Bucaná' es contradictoria; pero el *exhibit* C de los demandados, en relación con el *exhibit* D y los *exhibits* A y G (todos presentados por los demandados) nos proporciona la clave más segura para resolver, como resolvemos, el conflicto de evidencia a favor de la parte demandante.

"En efecto, el *exhibit* C de los demandados, copiado literalmente, lee como sigue:

" 'EL SECRETARIO MUNICIPAL DE PONCE, PUERTO RICO, CERTIFICA: Que el Concejo Municipal de Ponce en su sesión ordinaria celebrada el día 17 de enero, 1908, por unanimidad, acordó la inscripción del camino de "Bucaná", según consta en el Particular número 5 del acta de la sesión de dicha fecha, obrante en el folio 254 del Libro de Actas del Concejo Municipal de Ponce núm. 235, el cual Particular copiado literalmente dice así:

" ' "PARTICULAR NÚM. 5: Se dió lectura a un informe del Ingeniero Municipal, sobre el escrito de varios vecinos de Bucaná presentado al Concejo el 10 de diciembre último, pidiendo urgentes reformas en el camino vecinal del barrio. Manifiesta el Ingeniero que todo lo que expresan los exponentes es verdad, a excepción de lo que informan respecto al puente de madera establecido en el río Bucaná, pues ignora si ha sido hecho con o sin permiso del Comisionado del Interior, y añade que de la misma manera que el de San Antón debe inscribirse dicho camino y votarse una partida de 80 a 100 dollars para bachear sus puntos en mal estado. El Concejo acordó por unanimidad la inscripción del camino de Bucaná, como camino municipal y consignar para el arreglo del mismo la cantidad de ochenta dollars, proponiéndose por Contaduría de acuerdo con el Departamento de Obras Públicas Municipales la correspondiente transferencia."

" 'Y para entregar a doña María Echevarría Vda. de Subirá, a petición suya, después de satisfacer los derechos correspondientes al caso, expido la presente, que firmo y sello en la ciudad de Ponce, Puerto Rico, a los dieciocho días del mes de diciembre del año mil novecientos veintiséis. (Fdo.) A. Vélez Bajandas, Secretario Municipal.'

"Según aparece de la certificación que se acaba de transcribir, ese camino vecinal de Bucaná tenía un puente de madera sobre el río Bucaná.

"Luego, el camino vecinal de Bucaná que fué inscrito bajo el número 8 en el Departamento del Interior tiene que atravesar el Río Bucaná.

"Veamos ahora los planos de caminos vecinales presentados por los mismos demandados. (*Exhibits* A y G.)

"En ambos planos aparece el camino de Bucaná marcado con el número 8 y aparece delineado como camino en proyecto, con dos ramales.

"Uno de dichos ramales, que es la Gran Calle de la Hacienda

Santa Cruz, va en dirección de norte a sur y no atraviesa el Río Bucaná. (Véanse los dos planos de caminos antes mencionados.)

"El otro ramal va en dirección de este a oeste y sí atraviesa el Río Bucaná. (Véanse otra vez los referidos planos.)

"La Corte llega a la conclusión, fuera de toda duda razonable, que el camino vecinal de Bucaná es el que atraviesa el Río Bucaná, o sea el que se describe en el apartado 2º de la quinta causa de acción de la última demanda enmendada.

"La Corte declara probados satisfactoriamente todos y cada uno de los hechos alegados en la quinta causa de acción de la demanda."

De lo expuesto aparece que aunque hay un conflicto de prueba, éste fué dirimido por la corte inferior a favor del demandante apelado, ya que ésta estimó probado con preponderancia de prueba: que la colindancia entre las fincas envueltas en este litigio es el borde o arista este, norte, este y no el borde o arista oeste, sur, oeste, de las zanjas que separan dichas fincas, por lo que siendo el demandante apelado dueño de dichas zanjas tenía derecho a reivindicarlas; que el camino municipal de Bucaná, al llegar a un punto esquina en el oeste de la hacienda Santa Cruz, del demandante apelado, dobla a la derecha (hacia el oeste), cruza sobre un puente del río Bucaná, y termina en la playa de Ponce, y no sigue derecho hacia el sur para penetrar dentro de y atravesar la hacienda Santa Cruz hasta llegar al mar Caribe, y que el camino denominado La Gran Calle de Santa Cruz es un camino privado perteneciente a la hacienda Santa Cruz, y no una continuación del camino Bucaná. No encontrando nada en los autos que revele pasión, prejuicio o parcialidad ni error manifiesto por parte de la corte sentenciadora al apreciar la prueba y dirimir el conflicto de la misma a favor del demandente, esta corte no se siente justificada para alterar la sentencia apelada.

Se alega por último que la corte inferior cometió error al resolver que los demandados no habían adquirido título sobre las fajas de terreno o zanjas en controversia a virtud de prescripción adquisitiva y que los demandados ha-

bían perdido todo derecho de acción por prescripción a tenor del artículo 1857 del Código Civil.

Los apelantes alegan que la evidencia ha demostrado que tanto ellos como sus antecesores han poseído las zanjas en controversia por más de diez años antes de entablarse la presente demanda, de buena fe y con justo título, pues las han poseído en concepto de dueños como parte de la finca Isabela de su propiedad y pacíficamente hasta que el demandante compró la hacienda Santa Cruz. Alegan además que la evidencia aportada por ellos demuestra que esta posesión había existido por más de cuarenta años.

No toda posesión puede producir la prescripción ni tiene la eficacia necesaria para invalidar los legítimos derechos del dominio, haciendo surgir éste a favor de una persona distinta del dueño. Para poder producir la prescripción ordinaria, ha de ser una posesión civil llevada a cabo en concepto de dueño, pública y pacíficamente, por el término que fija la ley y sin interrupción. *Iglesia Católica y Romana* v. *El Pueblo,* 11 D.P.R. 485; *Rivera et al* v. *Juncos Central Co.,* 31 D.P.R. 265. La posesión quieta y pacífica durante el término que fija la ley, no es, sin embargo, suficiente por sí sola, pues es necesario además que sea de buena fe y con justo título. *Ex parte Tapia,* 6 D.P.R. 247; *Ex parte Loubriel,* 6 D.P.R. 107; *Picart* v. *De León,* 22 D.P.R. 592.

En el caso de *Alvarez* v. *Avila,* 40 D.P.R. 523, 526, el allí demandante solicitó la reivindicación de cierta pequeña parcela de terreno, alegando que era parte de una finca de su propiedad que lindaba con terrenos del municipio de Quebradillas. El demandado estableció la defensa de prescripción ordinaria, alegando que venía poseyendo la porción reclamada por el demandante durante 22 años por concesión que le hizo el municipio de Quebradillas. Declarada con lugar la demanda, el demandado insistió en apelación haber demostrado en el juicio que venía poseyendo la parcela en controversia desde el año 1907.

Esta corte, al confirmar la sentencia, resolvió que cuando

una persona que posee un terreno con justo título lo extiende más allá de sus verdaderos límites, penetrando en campo ajeno y poseyendo éste por veintidós años, esta posesión no puede convertirse en dominio en virtud de prescripción ordinaria por no ser la posesión de buena fe y con justo título que requiere el artículo 1857 del Código Civil.

En el caso de autos la posesión gozada por los apelantes de las zanjas en litigio, no puede producir la prescripción ordinaria a tenor de la doctrina establecida en el referido caso, ya que de la prueba aparece claramente que dichos apelantes no hicieron otra cosa que extender su finca más allá de sus verdaderos linderos a pesar de que al ellos comprarla existían a lo largo del borde este, norte y este de la zanja que separa su finca de la del apelado los espeques vivos de una antigua cerca.

Tampoco puede la posesión llevada a cabo por los apelantes servir de base a la defensa de prescripción extraordinaria alegada por ellos, pues hubiese sido necesario que dichos apelantes hubiesen probado haber poseído las referidas zanjas por lo menos durante treinta años. Artículo 1859 del Código Civil.

Estamos conformes con la corte inferior en que tomando como base la declaración del testigo Julio Ribas Salguero, quien durante los años 1906 a 1910 atendía al cultivo de la hacienda Isabela de los apelantes, resulta satisfactoriamente probado que hasta el año 1910 hubo una cerca de alambre a lo largo del borde o arista este, norte y este de las zanjas en litigio, y que esa cerca era la colindancia entre la finca de los apelantes y la del apelado.

Bajo tales circunstancias, habiéndose radicado la demanda primitiva en este litigio en enero 9, 1929, el período de diez y nueve años que ha transcurrido no es suficiente para convertir la posesión de los apelantes en dominio en virtud de prescripción extraordinaria.

*Debe confirmarse la sentencia apelada.*

El Juez Presidente Señor Del Toro no intervino.