ESTEBAN, JOSÉ y MARÍA LAÓ RIVERA Y ROSARIO ET AL., demandantes y apelados, *v.* RAMÓN MELÉNDEZ TABALES ET AL., demandados y apelantes.

Núm. 10434.—*Sometido:* Abril 1, 1951. *Resuelto:* Abril 23, 1951.

434

*Faustino R. Aponte,* abogado de los apelantes; *Cruz Ortiz Stella
y Francisco González, Jr.,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tri-
bunal.

Los demandantes son herederos y causahabientes de here-
deros de Francisca Cintrón Nieves y Esteban Rivera, quie-
nes siendo casados entre sí tenían inscrita a su favor una
finca rústica compuesta de 45 cuerdas de terreno, situada
en el barrio Chupacallos de Ceiba.(¹)

Allá para el 20 de diciembre de 1915 y en vida de su
citada esposa, Esteban Rivera suscribió un pagaré por la

(¹) Francisca Cintrón Nieves falleció el 15 de febrero de 1916 y
Esteban Rivera en 20 de febrero de 1932.

suma de $400 a favor de Francisco Hernández. Vencido éste en época en que ya Francisca Cintrón Nieves había muerto, se instó por el acreedor demanda en cobro de dinero ante la Corte Municipal de San Juan contra Esteban Rivera, mas no así contra los herederos de su finada esposa. (²) Anotada la rebeldía de Rivera, la Corte Municipal de San Juan dictó sentencia en su contra por $400 de principal, $13.73 de intereses y $50 de honorarios de abogado. Firme esa sentencia se expidió por el Secretario orden de ejecución contra el demandado Esteban Rivera, dirigida al márshal de la Corte Municipal de San Juan. Éste endosó dicha orden al márshal de la Corte Municipal de Fajardo y en cumplimiento de la misma el márshal de esa última corte vendió en pública subasta en 26 de marzo de 1917 la referida finca de 45 cuerdas, llevándose la buena pro Faustino R. Fuertes, causante de los demandados Carmen Garzot Vda. de Rodríguez Fuertes y William, Alberto y Carmen Rodríguez Garzot, por la suma de $300, otorgándose a favor de aquél la correspondiente escritura pública de venta judicial e inscribiéndose la misma en el Registro de la Propiedad de Humacao. De una certificación expedida por el Registrador de la Propiedad Interino de Humacao, aparece que el 21 de marzo de 1911 se practicó la inscripción primera de la mencionada finca, a nombre de Esteban Rivera y Francisca Cintrón Nieves, a virtud de un expediente posesorio previamente tramitado por ellos ante la Corte Municipal de Fajardo, así como que:

"En la Corte Municipal de San Juan se siguió un pleito bajo el número 4216 por Francisco Hernández como demandante versus Esteban Rivera como demandado, sobre cobro de dinero, y anotada la rebeldía se dictó sentencia por dicha corte a favor del demandante Francisco Hernández el día 18 de septiembre de 1916 por la suma de $413.73 de principal más $50 para honorarios del abogado, intereses legales y costas. En

(²) No se desprende claramente si el pagaré constituía una obligación privativa de Rivera o si por el contrario lo era de la sociedad de gananciales. Es innecesario, sin embargo, determinarlo.

virtud de dicha sentencia se expidió por la citada corte con fecha 29 de enero de 1917 una orden de ejecución que fué dirigida al márshal de la Corte Municipal de San Juan, la cual fué endosada por éste al márshal de la Corte Municipal de Fajardo, quien con fecha primero de marzo de 1917 y en su cumplimiento embargó a Don Esteban Rivera como bienes sujetos a ejecución la de este número, y anunciada la subasta para las dos de la tarde del día 26 de marzo de 1917 después de la publicación de los correspondientes edictos y avisos se efectuó la misma en dicho día y hora en la cual obtuvo la buena pro don Faustino R. Fuertes, Jr., como único licitador, quien pagó en el acto la suma de $300, levantándose la correspondiente acta de la referida subasta; y por tal motivo don Julio López Cruz, casado, empleado público, mayor de edad y vecino de Fajardo en su carácter de márshal de la Corte Municipal de Fajardo y actuando á nombre y por la autoridad del márshal de la Corte Municipal de San Juan, vende la finca de este número a don Faustino R. Fuertes, Jr., casado con doña Carmen Garzot, mayor de edad, propietario y vecino de Naguabo, por la suma de $300 que pagó en el acto de la subasta por cuyo motivo le otorgó carta de pago. En su virtud don Faustino R. Fuertes, Jr., inscribe a su favor la posesión de la finca de este número a título de compra en subasta pública. Lo referido consta del Registro, de la copia de la escritura número 26 otorgada en Fajardo a 26 de marzo de 1917 ante el notario don Ángel García Veve, de una certificación expedida en San Juan con fecha 16 de julio de 1919 por el Secretario de la Corte Municipal Daniel Sosa, en la cual se insertan las copias de lo actuado en el referido pleito, y de la certificación de matrimonio que se ha tenido a la vista, habiendo sido presentados los dos primeros documentos en este Registro a las dos de la tarde del día 6 de agosto corriente según el asiento número 17 al folio 17 del tomo 28 del diario. . . . . . ''

Posteriormente, Faustino R. Fuertes vendió dicha propiedad a Ramón Meléndez Tabales, casado con Mercedes Meléndez Meléndez, por la suma de $500, "quedando exentos los esposos vendedores, Fuertes y Garzot, de la responsabilidad de evicción y saneamiento por haber sido así convenido entre las partes." Luego de ser inscrita en el Registro de la Propiedad la venta de Fuertes a Meléndez Tabales, se

constituyó por éste y un pariente suyo una Sociedad Agrícola Industrial bajo la razón social de Meléndez y Meléndez, a la cual Ramón Meléndez Tabales aportó la finca mencionada y un condominio equivalente a la mitad de otra finca.

En la demanda radicada en este caso, después de exponerse los hechos ya reseñados, se alega·que ni Faustino R. Fuertes ni sus sucesores en título, Ramón Meléndez Tabales y la sociedad Meléndez y Meléndez, han tenido buena fe en la posesión de la finca objeto del litigio, constándole a todos ellos por el Registro de la Propiedad de Humacao que el márshal de la Corte Municipal de Fajardo actuó sin jurisdicción en el asunto y que, por tanto, la venta efectuada por éste a favor de Fuertes fué. nula e inexistente. Se solicita en ella se declare la nulidad de las actuaciones de la Corte Municipal de San Juan, se ordene la reivindicación de la finca y el desalojo de la misma, y el pago de frutos y rentas, con costas y honorarios de abogado.

Negados los hechos esenciales de la demanda, fué el pleito a juicio, dictando la corte inferior sentencia en favor de los demandantes, declarando nula e inexistente la venta efectuada por el márshal de la Corte Municipal de Fajardo y con lugar la demanda; condenando a los demandados a devolver a los demandantes la finca objeto de la acción; ordenando a los demandados que una vez firme la· sentencia desalojen la misma; ordenando al Registrador de la Propiedad de Humacao que proceda a cancelar todas las inscripciones de dicha finca que aparecen en el citado Registro, comenzando con la que figura a favor de Faustino R. Fuertes; y condenando a los demandados Meléndez y Meléndez al pago de las costas, incluyendo la suma de $300 para honorarios de abogado.[3] De esa sentencia apelaron los demandados Ramón Meléndez Tabales, Carmen y José Ramón Meléndez Meléndez, Serafín Meléndez y Dolores Quiñones y la Sociedad Agrícola Industrial Meléndez y Meléndez. ·

---

[3] Los causahabientes de Faustino R. Fuertes que figuran como demandados, no contestaron y su rebeldía fué anotada.

Imputan a la corte inferior en apelación haber errado:
(1) Al admitir en evidencia prueba claramente inadmisible;
al no resolver (2) que los demandados eran terceros hipo-
tecarios; (3) que el artículo 33 de la Ley Hipotecaria no
tiene aplicación a los hechos de este caso; y (4) que los
demandados adquirieron el dominio sobre la finca en cues-
tión por la posesión durante más de diez años entre pre-
sentes y más de veinte entre ausentes, con buena fe y justo
título; al resolver (5) que deben devolver la finca en litigio
sin compensación para ellos; y (6) que la orden de ejecu-
ción y la sentencia de la Corte Municipal eran nulas; (7) al
permitir a Narcisa Morales García comparecer como parte
demandante; (8) al no resolver que la acción de los deman-
dantes no estaba prescrita de acuerdo con los artículos 36,
37 y 38 de la Ley Hipotecaria; (9) al condenarles a pagar
$300 de honorarios de abogado; al resolver (10) que tenía
autoridad para dejar sin efecto la sentencia de archivo; y
(11) que los demandantes podían atacar colateralmente los
procedimientos de subasta. Pasaremos a discutirlos inme-
diatamente.

■ Según el artículo 245 del Código de Enjuiciamiento
Civil:

"Cuando la orden de ejecución fuere contra la propiedad
del deudor declarado tal por la sentencia, podrá librarse al
márshal de cualquier distrito de la Isla. *Cuando ordenare la
entrega de propiedad real o personal, deberá librarse al már-
shal del distrito en que radicare la propiedad, o parte de
ella.* . . . . ." (Bastardillas nuestras.)

Tan pronto fué firme la sentencia dictada por la Corte
Municipal de San Juan en la acción en cobro de dinero
seguida contra Esteban Rivera, procedía naturalmente la
expedición de una orden de ejecución para hacer efectiva la
sentencia dictada. Tal orden de ejecución se libró, mas lo
fué al márshal de la Corte Municipal de San Juan y por
éste endosada al márshal de la Corte Municipal de Fajardo.
Ello no se ajustó a derecho. Si se deseaban embargar bie-

nes radicados dentro del distrito judicial de Fajardo, lo procedente era expedir una orden de ejecución dirigida al márshal de la Corte Municipal de Fajardo. Al actuar el márshal de esta última Corte a virtud del endoso héchole por el márshal de la Corte Municipal de San Juan, su actuación resultó enteramente nula e inexistente. *Lawton* v. *P. R. Fruit Exchange*, 42 D.P.R. 291; *Solá* v. *Castro*, 32 D.P.R. 804, 812; *Benet* v. *Hernández*, 22 D.P.R. 348. *Cf. Maldonado* v. *Preston*, 22 D.P.R. 659.

 Del Registro de la Propiedad, como se ha visto, aparecía claramente la causa de la nulidad ‧e inexistencia de la venta efectuada por el márshal de la Corte Municipal de Fajardo a favor de Faustino R. Fuertes. Siendo ello así, Ramón Meléndez Tabales y la sociedad Meléndez y Meléndez no eran terceros. De acuerdo con los artículos 33 y 34 de la Ley Hipotecaria:

"Artículo 33.—La inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes."

"Artículo 34.—No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el Registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo Registro. . .."

Ramón Meléndez Tabales y la sociedad de que formaba parte no eran terceros, puesto que si bien no intervinieron en el acto o contrato que dió lugar a la inscripción de la finca a favor de Fuertes,(⁴) sin embargo, aparecía claramente del registro el vicio de que adolecía su título y, por ende, ellos tenían conocimiento del mismo. *Cruz* v. *Sucn. González*, ante, pág. 308; *Lizardi* v. *Caballero*, 65 D.P.R. 83; *Comunidad Religiosa etc.* v. *Fernández*, 61 D.P.R. 133, 142; *Annoni* v. *Sucn. Nadal*, 59 D.P.R. 640, 645; *Crespo*

---

(⁴) El artículo 27 de la Ley Hipotecaria provee que:

"Para los efectos de esta Ley se considera como tercero aquél que no haya intervenido en el acto o contrato inscrito."

v. *Schlüter*, 58 D.P.R. 834; *Vives* v. *Sucn. Amorós*, 34 D.P.R. 174, 185. Siendo nula e inexistente la actuación del márshal de la Corte Municipal de Fajardo, la. inscripción de la escritura de compraventa en el Registro de la Propiedad de Humacao no podía dar validez a tal actuación. Así lo dispone de manera taxativa el artículo 33 de la Ley Hipotecaria, supra. Y constando claramente del registro esa causa de nulidad, Meléndez Tabales al comprar la finca a Fuertes no adquirió un título válido, ni era un poseedor de buena fe. Igual podemos decir con respecto a la sociedad de que Meléndez Tabales formaba parte. *Vives* v. *Sucn. Amorós*, supra. Así, pues la prescripción ordinaria no podía aprovechar a Meléndez Tabales ni a la sociedad Meléndez y Meléndez, por no ser su posesión de buena fe. Artículos 1840, 1850 y 1857 del Código Civil, ed. 1930.(5) La prescripción extraordinaria, sin necesidad de título ni de buena fe, tampoco les favorece, toda vez que la posesión de ellos hasta la fecha en que se radicó la demanda del presente caso en 17 de agosto de 1942 no abarca el período de treinta años requerido por la ley para tales casos. Artículo 1859 del Código Civil;(6) *Larracuenta* v. *Fabián*, 56 D.P.R. 775, 789; *Saurí* v. *Echevarría Vda. de Subirá*, 51 D.P.R. 73; *Sucn. Juarbe* v. *Pérez*, 42 D.P.R. 367; *González Rodríguez* v. *Fumero*, 38 D.P.R. 556; *López et al.*, v. *Qui-*

---

(5) Los artículos 1840, 1850 y 1857 del Código Civil, ed. 1930, proveen:

"Artículo 1840.—Para la prescripción ordinaria del dominio y demás derechos reales se necesita poseer las cosas con buena fe y justo título por el tiempo determinado en la ley."

"Artículo 1850.—La buena fe del poseedor consiste en la creencia de que la persona de quien recibió la cosa era dueña de ella, y podía transmitir su dominio."

"Artículo 1857.—El dominio y demás derechos reales sobre bienes inmuebles se prescriben por la posesión durante diez años entre presente y veinte entre ausentes, con buena fe y justo título."

(6) El artículo 1859 del Código Civil dispone:

"Se prescriben también el dominio y demás derechos reales sobre los bienes inmuebles por su posesión no interrumpida durante treinta años, sin necesidad de título ni de buena fe, y sin distinción entre presentes y ausentes, salvo la excepción determinada en el artículo 475, segunda sección, capítulo I, título VII, libro segundo, de este código."

ñones, 30 D.P.R. 342; *Martorell et al.* v. *J. Ochoa & Hermanos*, 25 D.P.R. 759; *Morales* v. *Landrau*, 15 D.P.R. 782, 792.

Los artículos 36, 37 y 38 de la Ley Hipotecaria no son de aplicación, toda vez que, como hemos visto, los demandados no son terceros. (⁷)

No siendo terceros los demandados, la corte inferior no cometió error al admitir en evidencia las actas de defunción de los causantes de los demandantes, las actas de nacimiento de éstos, la certificación del Registro de la Propiedad, la certificación del Secretario de la Corte Municipal de San Juan, el pagaré en que se fundó la acción en cobro de dinero, ni los demás documentos ofrecidos en evidencia por los demandantes.

█ Habiéndose efectuado por el márshal de la Corte Municipal de Fajardo la venta en pública subasta de la finca sin tener autoridad para ello, el título así adquirido podía ser atacado colateralmente. *González* v. *Anglada*, 33 D.P.R. 1021, 1024; *cf. Pérez* v. *Tribunal de Distrito*, 70 D.P.R. 656, 663; *Benítez* v. *Benítez*, 34 D.P.R. 222, 226.

█ Radicada, como se ha visto, la demanda en este caso en 17 de agosto de 1942 y en vista de que el caso había per-

---

(⁷) Los artículos 36, 37 y 38 de la Ley Hipotecaria proveen:

"Artículo 36.—*Las acciones rescisorias y resolutorias no se darán contra tercero* que haya inscrito los títulos de sus respectivos derechos conforme a lo prevenido en esta Ley.

"Artículo 37.—Se exceptúan de la regla contenida en el artículo anterior:

"1.—Las acciones rescisorias y resolutorias que deban su origen a causas que consten explícitamente en el Registro.

"2.—Las acciones rescisorias de enajenaciones hechas en fraude de acreedores en los casos siguientes:

"Cuando la segunda enajenación haya sido hecha por título gratuito.

"Cuando el *tercero* haya sido cómplice en el fraude.

"En ambos casos *no perjudicará a tercero* la acción rescisoria que no se hubiere entablado dentro de un año, contado desde el día de la enajenación fraudulenta.

"Artículo 38.—En consecuencia de lo dispuesto en el artículo 36, no se anularán ni rescindirán 'los actos o contratos *en perjuicio de tercero* que haya inscrito su derecho, . . . . . . . ."
(Bastardillas nuestras.)

manecido inactivo durante más de un año, en 18 de enero de 1944 el Secretario de la Corte de Distrito de Humacao solicitó que a tenor con lo dispuesto por la Regla 3 para las cortes de distrito se considerara el caso como abandonado. Después de notificada esa moción a las partes la corte dictó sentencia en 31 de enero del mismo año decretando el archivo del caso. Más tarde, o sea en 17 de noviembre de 1948, los demandantes solicitaron se dejara sin efecto la sentencia así dictada. Por resolución de 18 de febrero de 1949 la corte inferior dejó sin efecto la sentencia de archivo y sobreseimiento y reinstaló el caso, haciendo constar en su resolución los motivos que tenía para ello, siendo éstos, entre otros, que "para la fecha en que se dictó la sentencia de archivo por falta de instancia, había una moción sometida a la consideración de la corte sin estar resuelta y que las partes debieron estar interesadas en que se resolviera." El examen que hemos hecho de este incidente no nos convence de que la corte cometiera error al dejar sin efecto su referida sentencia y al reinstalar el caso.

Aunque la condena en honorarios de abogado tan sólo procede cuando la parte perdidosa ha sido temeraria,(8) reiteradamente hemos resuelto que no intervendremos con la discreción del tribunal a quo al imponerlos, a no ser que se nos convenza de que al así hacerlo abusó de su discreción. *Santiago* v. *González*, 71 D.P.R. 942; *Figueroa* v. *Picó*, 69 D.P.R. 401. No estamos convencidos de que hubiera tal abuso en el presente caso.

Poco después de iniciado el juicio y mientras declaraba una testigo de los demandantes éstos llegaron a la conclusión de que Narcisa Morales García era parte necesaria en el pleito por ser causahabiente de una finada hija de Francisca Cintrón Nieves. Con tal motivo, solicitaron permiso para incluirla como demandante y la corte así lo autorizó. No creemos que con ello cometiera error.

---

(8) Ley 94 de 11 de mayo de 1937, pág. 239.

 Aunque en la demanda se solicitaron frutos y rentas, la corte inferior no incluyó el pago de éstos en su sentencia, por haber concluído—erróneamente, como hemos visto—que "si bien la venta judicial fué inexistente, el comprador adquirió de buena fe, por lo que no debe reintegrar los frutos percibidos." Si bien es innegable que los demandantes resultaron perjudicados con tal conclusión, como ellos no apelaron de la sentencia la misma debe subsistir a ese respecto. Así pues, aun si los demandados, en armonía con lo dispuesto por el artículo 384 del Código Civil, ed. 1930, (⁹) tuvieran derecho al reintegro de los gastos necesarios hechos para la conservación de la finca, ellos deben estar impedidos de obtener tal reintegro porque en justicia no pueden asumir dos posiciones contradictorias, es decir, no pueden ser poseedores de buena fe como declaró la corte inferior, para retener los frutos, y al mismo tiempo poseedores de mala fe para reclamar los gastos necesarios.

*No habiéndose cometido ninguno de los errores señalados, debe confirmarse la sentencia apelada.*

(⁹) El artículo 384 del Código Civil reza en lo pertinente así:

"El poseedor de mala fe abonará los frutos percibidos y los que el poseedor legítimo hubiere podido percibir, y sólo tendrá derecho a ser reintegrado de los gastos necesarios hechos para la conservación de la cosa. . . . . . . . . . ."